HERMAN BREIL, APPELLEE, v. CLAUS GROTH PLATT-
DUTSCHEN VEREEN, APPELLANT.

FILED APRIL 13, 1909.   No. 15,636.

Insurance: SICK BENEFITS. Within the meaning of an insurance con-
tract for sick benefits, it cannot be said that an assured is not
confined "constantly in the house" during an illness character-
ized by recurring periods of severity, although at intervals he
may occasionally step into his yard, or make visits to his physi-
cian, or other short and unusual trips; the assured at all times
being unable to resume the ordinary duties or pleasures of life.

APPEAL from the district court for Douglas county: LEE
S. ESTELLE, JUDGE. *Affirmed.*

*A. S. Ritchie* and *Charles L. Fritscher,* for appellant.

*W. F. Wappich, contra.*

EPPERSON, C.

On May 29, 1906, the plaintiff was, and for several years
had been, a member of the defendant society. This society
is a mutual fraternal association, organized for the pur-
pose of paying sick benefits to its members at the rate of
$8 a week, exclusive of the first week of sickness, and for
a period not exceeding 26 weeks. No policies, certificates
or contracts are issued to its members, but liability is
fixed by the rules and regulations adopted for its govern-
ment, and which provide, omitting provisions not per-
tinent: "Every member of the society is entitled to sick
benefits if his sickness is such that the member must re-
main constantly in the house and under the care and
treatment of a registered physician." On the 29th day

of May, 1906, the plaintiff was suffering with cataracts of the eyes. This trouble continued until after the institution of this action on November 13, 1906. Plaintiff sued to recover a balance due for 23 weeks' benefit; defendant having paid him for five weeks. He recovered in the court below, and defendant appealed.

About the second week of his said illness, and acting under the directions of his physician, he went to a hospital, where an operation was performed, and where he was retained for a period of two weeks for treatment. He then went to his home in the city of Omaha, where his physician resided, and where also the hospital was maintained. His physician never visited him at his home, nor did plaintiff perpetually remain within the house. He stepped into the yard occasionally, and went from one to four times each week to his physician's office. He returned to the hospital a few weeks later (the exact time is not disclosed), and again remained about two weeks, and suffered additional operations. He then spent two months at his home, until October or November, then returned once more to the hospital for further operations. This brings us to the time the suit was instituted, and perhaps beyond such time. The exact dates of the plaintiff's confinement in the hospital are not given, but it is reasonable to presume that such periods prior to the institution of this suit did not exceed six weeks. Plaintiff experienced considerable pain and inflammation of the eyes, but his physical condition was such that he did not need to remain within the house, except when in the hospital, and he was strong enough to go to his physician's office. When he did so, he was accompanied by some member of his family. This was necessary on account of his defective eyesight. On two or three occasions prior to the institution of the suit he went to the place of business of the president of the defendant society and made demands for the sick benefits sued for. The defendant admitted a liability for five weeks of his sickness, covering, we presume, the time plaintiff was in the hospital, but refused

liability for the remainder of the time, claiming that the plaintiff was not required by his sickness to remain in the house.

The rules and regulations of the defendant association constitute the agreement between the parties, and, in construing it, it is necessary to give force to the meaning which the parties evidently intended the words used should have. We are convinced that the only interpretation which may be given to this contract is that the defendant intended to pay to its members a weekly benefit during sickness, provided the sickness was such as would disable the member from departing from the house for the purpose of attending to the ordinary affairs of life. That a person "must remain constantly in the house" does not necessarily mean that one must remain perpetually within the four walls of a house. Within the meaning of the by-law quoted, one is confined to the house by sickness if his condition is such that he is unable to attend to the ordinary affairs of life and is required to remain in the house, except when making necessary visits to his physician. It cannot be said that a patient is not confined to his house constantly during an illness, which is characterized by recurring periods of severity, although at intervals he may step into his yard, or make visits to his physician, or other short and unusual trips, he at all times being unable to resume the ordinary duties or pleasures of life.

In *Hoffman v. Michigan Home & Hospital Ass'n*, 128 Mich. 323, 54 L. R. A. 746, it was held that a similar contract is not defeated by the fact that the insured went out by direction of his physician for an occasional and necessary airing, if, by reason of the illness, he was continuously confined to the house the larger portion of the time. In the case at bar, there can be no doubt but that the plaintiff was entitled to recover during the time he was in the hospital. With reference to the intervening periods of time, it cannot be said that he was convalescing, except following his last visit to the hospital, and, as to

that time, we are not concerned. Between operations he was simply undergoing treatment for the purpose of preparing for the following operation. At all times he suffered intense pain. There was inflammation about the eyes, and there can be no doubt but that he was physically disabled from attending to his daily business or from enjoying the ordinary pleasures of life. The construction placed upon the contract by the trial court and the jury was consistent with the above.

We find no error in the record, and recommend that the judgment be affirmed.

DUFFIE, GOOD and CALKINS, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.