W. H. RAMSEY, Respondent, v. GENERAL ACCIDENT, FIRE & LIFE INSURANCE COMPANY, Appellant.

### Kansas City Court of Appeals, January 9, 1912.

1. **HEALTH INSURANCE: Reasonable or Literal Construction.** A policy of health insurance provided for payment when the assured was "necessarily and continuously confined within the house and therein regularly visited by physician." The assured lived in Missouri, but was taken seriously sick at his hotel in the state of Florida. He was attended by a physician there for several days, who advised that he be taken home. He was then brought to his home in Missouri in a pullman sleeping car and remained sick for several weeks. It was *held* that a reasonable construction of the policy would include the sickness thus originating in Florida, and his trip home.

2. ———: ———: **Sickness Within the House.** A policy of health insurance providing for payment in case the assured was "continuously confined within the house, and therein regularly visited by a legally qualified physician" should not be construed to mean that the assured should be actually within the walls of a house all of the time of his sickness.

3. **NOTICE: Waiver.** Though a policy of health insurance requires notice of sickness to be given within ten days, yet, if no objection to the claim is made on that account and the insurer encourages the assured to go to the trouble and expense in proving his claim and afterwards advises him that the only reason it is not paid is that it does not come within the meaning of the policy, there is a waiver of notice.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

AFFIRMED.

*Harvey D. Dow* for appellant.

(1) The meaning of the policy is determined by its terms. They are the test, and that test in the case at bar is (1) "confinement within the house and (2) therein regularly visited by a legally qualified phys-

ician.'' The exact words of the policy set forth above, have been construed a number of times by the courts. Dunning v. Acc. Ass'n, 59 Atl. 535; Cooper v. Acc. & Sick Ben. Ass'n, 141 Mich. 478, 104 N. W. 734; Bishop v. U. S. Co., 91 N. Y. 176, 99 App. Div. 330; Schneps v. Fid. & Cas. Co., 101 N. Y. Supp. 106; Liston v. Cas. Co., 58 N. Y. Supp. 1090; Sawyer v. Protective Assn., 73 Atl. 168; Cas Co. v. Perdue (Ala.), 51 So. 352. (2) Notice to the insurance company is required by the policy. Particular notice to a person at a specified place, is not given until it reaches the person named at the place specified. McCord v. Casualty Co., 88 N. E. 6. (3) Compliance with the terms of a policy cannot be construed into a waiver. Aronson v. Acc. & Plate Glass Ins. Co., 99 Pac. 537; Brown v. Cas Co., 207 Pa. 609; Foreman v. Ins. Assn., 104 Va. 694; Farmers Assn. v. Kinsey, 101 Va. 236; Hayadorn v. Acc. Assn., 69 N. Y. Supp. 831; Mech. v. Acc. Soc., 63 N. Y. Supp. 1008; Wilkie v. Nat'l Council, 66 S. E. 579. Where the health insurance company, after the expiration of ten days from the time a party insured becomes ill, but before it knew the date when he did become ill, sent blank forms for proof of claim to him to be filled out, such conduct did not constitute waiver on its part of the provision requiring the plaintiff to notify it within ten days from beginning of illness. Whalen v. Accident Co., 58 Atl. 1057. Requiring proof of loss or strength of illness cannot be construed as a waiver because the proofs were necessary to establish what the loss was. Elhart v. Ins. Co., 92 Pac. 419, 37 Ins. L. J. 78; Greenwald v. Ins. Co., 102 N. Y. Supp. 157; McMahon v. Ins. Co., 42 N. W. 179; Acc. Co. v. Watson, 64 S. E. 693; Tuttle v. Traveling Men's Assn., 104 N. W. 1131; McCord v. Cas. Co., 88 N. E. 6; Rooney v. Cas. Co., 184 Mass. 26; Modern Woodmen v. Talbot, 107 N. W. 790.

*G. W. Barnett* for respondent.

The court committed no error in submitting this case to the jury. The plaintiff was confined within the house and therein regularly visited by a regular, qualified physician. A party need only be confined to his house in a substantial sense. The contract is to receive a reasonable construction. It is not necessary that the plaintiff should remain in the house all the time. To step out of doors now and then or to visit the office of the physician, would not be a violation of the clause of the policy so as to defeat a recovery. Hays v. Benevolent Assn., 127 Mo. App. 200; Hoffman v. Home & Hospital Association (Mich.), 87 N. W. 265; Benevolent Association v. Nancarrow (Col.), 71 Pac. Rep. 423; Turner v. Fidelity & Casualty Co. (Mich.), 70 N. W. 898; Hohn v. Casualty Co. (Mich.), 72 N. W. 1105. By calling for proofs of the illness and by putting plaintiff to trouble and expense in furnishing them and by long and continued negotiations as to the loss by denying liability on the ground that the plaintiff was not confined to his house under the terms of the policy, and by the receipt of the notice without objection at the time of its receipt, or at any other time that the notice came too late, the defendant has waived the necessity of timely notice. Meyers v. Casualty Co., 123 Mo. App. 682; Hohn v. Casualty Co. (Mich.), 72 N. W. 1105; Young v. Railway Mail Association, 126 Mo. App. 325; Dezell v. Insurance Co., 176 Mo. 253; Crenshal v. Insurance Co., 63 Mo. App. 678; Bolan v. Insurance Co., 58 Mo. App. 255; Cohn v. Insurance Co., 62 Mo. App. 271.

ELLISON , J.—Plaintiff is a merchant living in Sedalia, Missouri, and there took out a policy of health insurance. He afterwards was taken sick, on the 19th of March, 1910, in the state of Florida, came home, and continued to be sick for several weeks. Defendant

refused to pay his claim, whereupon he brought this action and recovered judgment in the trial court.

The policy contained the following provisions:

"Illness indemnity, at the rate of one hundred dollars per month for the number of consecutive days, after the first week, that the insured is necessarily and continuously confined within the house, and therein regularly visited by a legally qualified physician by reason of illness that is contracted and begins after this policy has been maintained in continuous force for thirty days; . . .

"Written notice . . . of any illness for which claim can be made, must be given to the company at Philadelphia, Pa., within ten days of date of accident or beginning of illness. Failure on the part of the assured of the beneficiary to comply strictly with said notice requirement shall limit the liability of the company to one-fifth the amount which would be otherwise payable under this policy."

When plaintiff's sickness came upon him in Florida, he went to his hotel, had fever, was sick at the stomach and suffering severe pains in his bowels. He went to bed at the hotel and sent for a doctor. The doctor came to his room and prescribed for him and the porter sent out for medicine. The doctor administered certain remedies and soon called again. He took sick on Sunday and on Tuesday morning the treatment having relieved him temporarily, he was able to be up and walk to the office of the doctor. The doctor after giving him further treatment and prescription, recommended him to go home, telling him to keep out of the sun and to do no walking or exercise. Plaintiff was taken to the depot in a carriage that was summoned to the hotel for him and was taken to Sedalia, his home, in a Pullman car, where he was driven in a carriage to his home. He remained at home and within the house a few days under the treatment of a doctor. He was at home during all this time, except he was driven in

a carriage to see his help at the store, but did not en-
gage in any business and was not able to do so. Where-
upon he concluded to go to Kansas City, for the pur-
pose of consulting physicians there and taking treat-
ment. He rode from Sedalia to Kansas City in a
parlor car and was able to take a street car to the san-
itarium. He met his physicians, who advised an oper-
ation. The operation was performed, which was very
painful, and in about two or three weeks later a second
operation was performed. He secured a room in a
hotel nearby. During all the time that he was at
Kansas City, he remained in his rooms in the hotel,
except each day he went to the sanitarium for treat-
ment, where he was treated daily by physicians. With
the exceptions of the times when the operations were
performed, he would be out of his room in going to
and from the sanitarium and in consultation with the
physician, about thirty minutes per day. During all
the balance of the time, he was confined to his room
all the time, and in bed most of the time. Though
the hotel was but a short distance from the sanitarium,
he usually was taken there in a carriage, but some-
times he was able to walk. After the first operation
had been performed and he had recovered somewhat
from its effects—about two weeks after the first oper-
ation and while waiting for the second—the doctors
advised him to go to his own home where he could sit
on the porch, and that getting out of doors in going
would be better for him rather than injurious, and that
he could go home and remain under their treatment
which they had prescribed. He returned home in a
parlor car and was taken in a carriage to his house.
During all the time that he was at home in Sedalia,
he remained confined within his house and was taking
the prescription given him by the doctors at Kansas
City, except that he sat upon the porch occasionally,
it being pleasant weather, for a short period at a time,
and was driven down to his store to see his clerks, but

did not go into the details of the business, perhaps
wrote a letter. He went back to Kansas City in very
much the same way as he had gone the first time, and
underwent the second operation and stayed confined to
his room in the hotel under the directions and treat-
ment of his physicians, and some time thereafter he
was told that he could return to his home and continue
their treatment, which he did, remaining confined to
his house until the 5th of May, the date of the termi-
nation of his claim.

The foregoing is taken substantially from a state-
ment by the parties, and in our opinion justified the
trial court in submitting the case to a jury.

The position taken by defendant is, in effect, that
the policy means that an assured must *litterally* and
actually be confined within the walls of a house *all*
the time. We think that position untenable. We think
that the contract should have a reasonable construc-
tion. And an assured who may be attacked with serious
illness at his hotel away from home and is advised by
a physician who is called, that he should be taken home,
and is transported in a Pullman car where he may be
accommodated with a bed, and who on arriving home
finds that he will be compelled to undergo an opera-
tion by skilled surgeons in a nearby city; goes there
and is operated upon and attended by them daily by
being taken to them in a carriage from his hotel near-
by, and occasionally walking to them, when able, being
taken home, yet under the treatment of a physician,
and confined within his house, except occasionally sit-
ting on the porch and being once driven down to his
place of business, though not taking part in business
matters, and at another time to a physician's office;
but with these exceptions, of shore duration, being in
the house and much of the time in bed, is within the
protection of the policy. We regard the case as gov-
erned by that of Hays v. Benevolent Assn., 127 Mo.

160 App.—16

App. 195. The opinion, by NORTONI, J., is supported
by the following cases: Hoffman v. Michigan Home
& H. Assn., 128 Mich. 323 (87 N. W. 265); Mutual
Benefit Assn. v. Nancarrow, 71 Pac. Rep. 423; Turner
v. Fidelity & Cas. Co., 112 Mich. 425 (70 N. W. 898);
Hohn v. Interstate Cas. Co., 115 Mich. 79 (72 N. W.
1105). See, as to construction of similar contracts,
James v. Casualty Co., 113 Mo. App. 622, which, inso-
far as relates to permitting the literal construction of
words to destroy the substantial meaning and object
of a contract, is applicable to this case.

Defendant insists that plaintiff failed to give it
the notice within the time required by the policy. The
evidence, however, showed beyond doubt that notice
was waived. The notice given by plaintiff was dated
April 7, which was more than ten days after the be-
ginning of his sickness. Preliminary proofs were sent
and on April 15, defendant acknowledged receipt in
these words:

"We are in receipt of your preliminary notice of
illness. Your doctor did not complete his side of the
blank and we must have a report from him on file.
Therefore kindly have him fill in the enclosed blank
and return it to us."

The suggestion as to the doctor was complied with
by plaintiff. He furnished certificate of physician who
attended him in Florida, and also a preliminary report
of illness by his physician at Kansas City, and defend-
ant at no instance objected to notice not being in time.
On the contrary he was furnished blanks for final proof
and was referred to defendant's agent at Kansas City
for adjustment of claim. After more correspondence,
and no objection on the score of notice, defendant
wrote plaintiff on July 26, 1910, giving reason for not
answering some of his letters that they were investi-
gating the claim, and asking of him further specific
information. Then after putting plaintiff to trouble
and expense in complying with its requirets, defend-

ant wrote to his attorney on August 23, saying that "we stand ready and willing at any time to make a settlement of this claim, provided the evidence is produced that the disability comes under the terms of the contract. . . . This is the only reason that his claim is being held up."

The foregoing established complete waiver. [Myers v. Casualty Co., 123 Mo. App. 682, and authorities cited.] There is no ground for reversal, and the judgment is accordingly affirmed. All concur.