GREAT EASTERN CASUALTY COMPANY *v.* ROBINS.

Opinion delivered March 2, 1914.

1.  INSURANCE—INDEMNITY INSURANCE—CONSTANT CONFINEMENT.—The term continuous confinement, within the meaning of an indemnity insurance policy, insuring plaintiff against sickness, does not mean that plaintiff must have been confined within the house every minute or hour, and the fact that he went out occasionally for the purpose of taking exercise and fresh air under the instructions of his physicians is not sufficient to prevent plaintiff from recovering in an action on the policy. (Page 610.)

2.  INSURANCE—INDEMNITY INSURANCE—DISABILITY.—The insured, in a sick indemnity insurance policy, was able to go to his office and give his foreman some directions, but he did not perform any of his duties, *held,* the insured is not prevented from recovering on the policy. (Page 611.)

3   INSURANCE—INDEMNITY INSURANCE—DAMAGES.—In an action on a policy of insurance indemnifying insured for loss of time and confinement on account of sickness, damages awarded, *held,* under the facts, not execssive. (Page 612.)

Appeal from Faulkner Circuit Court; *Eugene Lankford,* Judge; affirmed.

*Miles & Wade,* for appellants.

1.   The court's instruction construing part A of section 8 of the policy, is in direct conflict with instruction 1, given at appellant's request, the latter instruction following literally the language of the policy. The policy means literally what it says.

Where a policy provides an indemnity for the insured while he is confined *within* or *to his house,* and in

addition provides for further indemnity while the insured is yet totally or partially disabled, the courts give such construction to the policy as is literally expressed in its language.    75 N. H. 276; 47 Pa. Sup. Ct. 276; 99 Me. 390; 141 Mich. 482; 135 Mich. 439.; 91 N. Y. Supp. 176; 58 N. Y. Sup. 1090; 111 N. W. 502; 23 L. R. A. (N. S.) 359, note; 42 L. R. A. (N. S.) 700, note.

*R. W. Robins,* for appellee.

The language of the policy, being that of the insurer, will be given the strongest interpretation it will reasonably bear against the insurer.    102 Ark. 1; 89 Ark. 471; 80 Ark. 49; 97 Ark. 425.

The courts, in construing policies similar to this, generally hold that they are to be liberally construed so as to carry out the object of the contract, *i. e.,* to provide indemnity to one who through sickness is disabled and prevented from engaging in the ordinary duties and pleasures of life.    54 L. R. A. 746; 96 Pac. (Col.) 82, 18 L. R. A. (N. S.) 109; 120 N. W. 905, 23 L. R. A. (N. S.) 359; 150 Ky. 52, 149 S. W. 1110; 160 Mo. App. 236, 142 S. W. 763.    See also 94 Ark. 417.

McCULLOCH, C. J.    This is an action on a policy of insurance giving indemnity against sickness and consequent confinement and disability to perform the duties of business or occupation.    The clauses of the policy upon which liability is based read as follows:

"LOSS OF TIME—CONFINING PERIOD.

"Section 8.    Part A.    If any sickness, contracted and beginning after this policy has been in continuous force for thirty days from this date, shall totally disable and prevent the insured from performing any and every duty pertaining to any and every kind of business or occupation, and shall necessarily and continuously confine him within the house, where he shall be regularly visited by a licensed physician, the company will pay for the period of such confinement, not exceeding six months, benefit at the rate per month of one hundred dollars.

"LOSS OF TIME—NONCONFINEMENT PERIOD.

"Part B.   If immediately following such confinement, or if by reason of any sickness so contracted, the insured shall be totally and continuously disabled as above defined and regularly treated by a licensed physician, but not necessarily confined within the house, the company will pay for such disability, not exceeding one month, the benefits provided in Part A of this section; provided, always, that the combined periods for which benefits will be paid for any one sickness shall not exceed six consecutive months.

"SPECIAL INCREASED BENEFITS, ACCIDENT AND SICKNESS, HOSPITAL CONFINEMENT.

"Section 9.   In the event of the insured becoming entitled to benefits under the provisions of sections 2 and 8 of this policy, and if such injury or such sickness necessitates the insured's removal to a regularly incorporated hospital within ninety days from the date of accident or commencement of sickness, the company will pay the insured an additional *ten per cent* of the amount that would otherwise be payable under this policy, for the period of such confinement, not exceeding three consecutive months."

The plaintiff was editor and publisher of a newspaper at Conway, Arkansas, his duties being that of writing editorials for the paper and superintending the publication of the paper.   On October 6, 1912, the policy having been in force for more than thirty days, he became ill, and his malady was diagnosed by the physicians as incipient tuberculosis.   He had fever every day from that time on and was regularly treated by a physician. After the case had been diagnosed by several physicians he was sent to a sanatorium in the city of Denver, where he remained for a time and was discharged from treatment, it being determined that the progress of the disease had been arrested.

On the trial of the cause below the jury returned a verdict in favor of the plaintiff, as follows:

"Confinement period ................$436.00
    Nonconfinement period ............ 100.00
    Hospital fee .................... 30.00

    Total ........................$566.00"

That was the amount claimed by plaintiff.

The court entered judgment upon the verdict, and also for the statutory penalty of 12 per cent and an attorney's fee.

The testimony discloses the course of treatment to which plaintiff was subjected while in the sanatorium at Denver. He was continuously under the treatment of physicians and was confined to the house except that he was out for a short time daily, under the direction of the physician, for the purpose of getting sunshine and fresh air.

The court instructed the jury that "a continuous confinement within the meaning of this instruction does not mean that the plaintiff, in order to be entitled to this benefit, must have actually been confined within the walls of a house every minute or hour," but that "the mere fact that he went out occasionally and at stated intervals for the purpose of taking exercise and fresh air, under the instructions of his physician, would not be sufficient to prevent plaintiff from recovering in this action."

This instruction was given over the objection of the defendants, and the ruling is assigned as error. That is the principal ground urged here for reversal.

We are of the opinion that the court correctly interpreted the contract and that the instruction complained of was not in conflict with the law which controls. Cases cited in the brief fully sustain that view. *Jennings* v. *Brotherhood* (Col.), 96 Pac. 982, 18 L. R. A. (N. S.) 109; *Breil* v. *Claus*, 84 Neb. 155, 120 N. W. 905, 23 L. R. A. (N. S.) 359; *Metropolitan Plate Glass & Casualty Ins. Co.* v. *Hawes*, 150 Ky. 52, 149 S. W. 1110; *Ramsey* v. *General Accident Ins. Co.*, 160 Mo. App. 236, 142 S. W. 763.

In *Metropolitan Plate Glass & Casualty Ins. Co.* v. *Hawes, supra,* the policy was almost identical with the

one in suit and the facts were the same with respect to plaintiff's malady, the only difference in the case being that, instead of leaving the house, he sat on the porch for a considerable time each day under the advice of a physician. The court said: "Appellee's deceased was affected with tuberculosis and it is of common knowledge that a person in that condition requires fresh air and as much as possible, and he testified that while he was actually sick and would have felt much better in the house and in bed, his physician ordered him to get out into the open as much as possible and he did so. He sat on the porch at times as the weather was warm."

In *Breil* v. *Claus, supra,* the court, in passing upon a similar provision of a policy, said: "That a person 'must remain constantly in the house' does not necessarily mean that one must remain perpetually within the four walls of a house. Within the meaning of the by-law quoted, one is confined to the house by sickness if his condition is such that he is unable to attend to the ordinary affairs of life and is required to remain in the house, except when making necessary visits to his physician. It can not be said that a patient is not confined to his house constantly during an illness, which is characterized by recurring periods of severity, although at intervals he may step into his yard, or make visits to his physician, or other short and unusual trips, he at all times being unable to resume the ordinary duties or pleasures of life."

In the Colorado case cited above, the court said:

"It appears from the testimony that during a considerable portion of the period for which plaintiff claimed sick benefits he was out nearly every day, by advice of his physician, when the weather was favorable, and that he was not actually confined to his bed on account of sickness during that time. It does appear, however, that during this period he was not able to perform any labor, or pursue his usual calling. * * * It was not necessary that he be helpless, or that he remain in bed, or in the house, during such illness, when it might advance his re-

covery and correspondingly relieve the company from its obligation to him, if he should take some exercise and expose himself to the healing influences of sunshine and fresh air, provided he is entirely incapacitated for work or business on account of his illness.''

The contract is couched in the language of the insurer, and it would be following too much the letter of it to say that temporary excursions from the house upon the advice of a physician for the purposes of treatment, take the case outside of the terms of the policy. That would be a very strained construction of the language of the policy and would defeat its very purpose.

Our conclusion is that the case was properly presented to the jury and that the verdict is sustained by the evidence.

It is contended, however, that the verdict is excessive.

Plaintiff testified that after he became sick on October 6, 1912, and until he was finally discharged from the sanatorium and returned home, he was unable to perform any of the duties of his business and was incapacitated from other work. He testified, however, that during the short time that he remained in Conway and while he was preparing to go to Denver, he made a trip occasionally down to his office and gave instructions to his foreman, but was unable to perform any of the duties pertaining to his business. He left home on October 20, and reached Denver on November 1, and entered the sanatorium on November 3. He remained there until February 17, and then was given permission to return home for a short time, which he did, and came back to the sanatorium on March 6, and remained there until April 11. He was, therefore, confined in the sanatorium four months and seventeen days, which was more than sufficient to entitle him to recover the $436 allowed by the jury for the confinement period. The time that he was not in the sanatorium, including the period after he became sick and up to the time he went in the sanatorium and also the period of time that he was permitted tem-

porarily to leave, was more than sufficient to make up the nonconfinement period covered by the verdict of the jury.   It is true that before he went to the sanatorium he was able to go down to his office a few times to give instructions to his foreman; but this did not amount to performance of any of his duties, and did not prevent him from recovering for liability during that period. Mere consultation with his foreman and giving instructions concerning the operation of his business did not amount to performance of his duties, for it does not appear that he was at the office superintending the publication of his paper or the management of his business.   He merely went there for the purpose of giving some instructions to his foreman.   Mere consultation with the foreman or giving instructions did not take his case out of the terms of the policy any more than would performing that duty while he was confined to his room have done so.   It would be absurd to say that if his foreman had attended him at his room for the purpose of getting instructions, that that would have amounted to such a discharge of his ordinary duties as to prevent his recovery of indemnity. There is some conflict in the testimony as to the extent that he was able to perform his duties before he went to the sanatorium; but his own testimony is sufficient to make out a case within the terms of the policy.   We are, therefore, of the opinion that the evidence was sufficient to warrant the verdict of the jury as to amount awarded.

Affirmed.