[No. 20134.   Department Two.   December 6, 1926.]

## ALICE M. STEWART, *Respondent*, v. CONTINENTAL CASUALTY COMPANY, *Appellant*.[1]

[1] INSURANCE (127)—HEALTH INSURANCE—LIMITATIONS BY POLICY—CONFINEMENT TO HOUSE. An insured under a health policy is "strictly and continuously confined within the house and therein under the regular care" of a physician, within the terms of the policy, where she became afflicted with a serious disease of the eyes, went to a hospital and was operated upon, and returned home where she remained except for short walks outdoors on the advice of her physician, necessarily accompanied by another person, and was practically helpless for nineteen months and twenty days, under the care of a physician.

Appeal from a judgment of the superior court for King county, Paul, J., entered May 29, 1926, upon findings in favor of the plaintiff, in an action upon a policy of health insurance, tried to the court. Affirmed.

*Poe, Falknor, Falknor & Emory,* for appellant.

*G. F. Vanderveer* and *M. H. Cooperman,* for respondent.

PARKER, J.—The plaintiff, Miss Stewart, commenced this action in the superior court for King county, seeking recovery from the defendant casualty company upon certain health insurance provisions of a policy issued to her by that company. A trial upon the merits in the superior court, sitting without a jury, resulted in findings and judgment awarding recovery to Miss Stewart in the sum of $1,866.67, as a balance due under the policy for her loss of time from her occupation, during which she was totally disabled by sickness and continuously confined within the house under the regular care of a legally qualified physician. The award of the court is for loss of nineteen months' and

[1]Reported in 250 Pac. 1084.

twenty days' time at one hundred dollars per month, less one hundred dollars which had been paid her by the company. From this disposition of the case by the superior court, the company has appealed to this court.

The policy, among other things, insures "against loss of time from bodily sickness or disease." The provisions of the policy with which we are here concerned, are the following:

"Part VIII.    Health Insurance.

"In the event that the insured shall suffer from any bodily sickness or disease which is contracted and begins while this policy is in force as regards health insurance, the company will pay for the loss of time resulting therefrom as follows:

"A.    Said monthly indemnity will be paid for such period as the insured by reason of such sickness shall be totally and continuously disabled from performing each and every duty pertaining to his occupation, and shall also by reason of such disability be strictly and continuously confined within the house and therein be under the regular care of a legally qualified physician.

"B.    Said monthly indemnity will also be paid for such period, not exceeding two months, as the insured by reason of a non-confining sickness or by reason of convalescence from a confining sickness shall be totally and continuously disabled from performing each and every duty pertaining to his occupation and shall also be under the regular care of a legally qualified physician, though not confined within the house."

The monthly indemnity referred to in these paragraphs is one hundred dollars.

The controlling facts, as we view them, may be fairly summarized as follows: The policy was issued on April 2, 1923; the first and second annual premiums were paid to the company. Plainly, therefore, the policy was in force up to April 2, 1925, and for such further time as Miss Stewart may have been entitled to monthly indemnity under the above quoted provi-

sions, for her sickness beginning while the policy was in force. In June, 1924, Miss Stewart became afflicted with acute glaucoma of the left eye, and later in February, 1925, became afflicted with acute glaucoma of the right eye. On August 9, 1924, she had become, and thereafter was continuously, disabled by reason of such sickness from performing any duty pertaining to her occupation as a nurse, or any other occupation, up until March 29, 1926; that is, she was so disabled for a period of nineteen months and twenty days. She was, during the whole of that period and for some three weeks prior thereto, under the regular and continuous care of a legally qualified physician.

She went to a hospital on August 9, 1924, where there was then performed a very serious operation upon her eye by her physician, who continued to visit and attend her there daily up until August 17, 1924. She then returned to her home, where she was compelled to remain continually because of the continued affliction to her eyes, until March 29, 1926; except that she went occasionally to her physician's office for examination and treatment, some four blocks distant from her home, always on such occasions being necessarily accompanied by another person; also to a hospital for treatment where she necessarily remained some twelve days in November, 1925; and also occasionally she took very short walks outdoors by advice of her physician, always, when out-of-doors, necessarily accompanied by another person. Her eyes were examined and treated by her physician approximately weekly during the period in question, apparently, aside from the first month or two, for the most part at her physician's office, though occasionally at her home.

The evidence as a whole, we think, renders it quite clear that she was practically helpless during this whole period in so far as being able to go alone from

her home was concerned, and that her every excursion from her home was for the sole purpose of receiving treatment by her physician, other than the occasional short walks taken by her for exercise in the open air by advice of her physician.

[1] The real controversy here is as to whether or not Miss Stewart can be considered as being, by reason of her disability, "strictly and continuously confined within the house and therein be under the regular care of a legally qualified physician," within the meaning of paragraph A of the policy above quoted. The decisions of the courts touching problems of this nature are seemingly not harmonious. It seems to us, however, that such conflict is rather more apparent than real, when each decision is particularly noticed in the light of the circumstances of the particular case dealt with. Indeed, there seems to be no two cases exactly alike. The words "confined within the house" or "confined to the house", have seldom been taken by the courts in their literal meaning. Among the decisions of the courts coming to our attention, which seem to us to lend support to the contentions here made in behalf of Miss Stewart and in support of the judgment of the trial court, we notice the following:

In *Great Eastern Casualty Co. v. Robins,* 111 Ark. 607, 164 S. W. 750, there was drawn in question a sick indemnity insurance clause reading as follows:

"If any sickness, contracted and beginning after this policy has been in continuous force for thirty days from this date, shall totally disable and prevent the insured from performing any and every duty pertaining to any and every kind of business or occupation, and shall necessarily and continuously confine him within the house, where he shall be regularly visited by a licensed physician, the company will pay for the period of such confinement, not exceeding six months, benefit at the rate per month of one hundred dollars."

This was followed by a non-confinement indemnity clause, in substance the same as the one here in question. The court's view of the applicable law is expressed as follows:

"The testimony discloses the course of treatment to which plaintiff was subjected while in the sanatorium at Denver. He was continuously under the treatment of physicians, and was confined to the house, except that he was out for a short time daily, under the direction of the physician, for the purpose of getting sunshine and fresh air.

"The court instructed the jury that 'a continuous confinement within the meaning of this instruction does not mean that the plaintiff, in order to be entitled to this benefit, must have actually been confined within the walls of a house every minute or hour,' but that 'the mere fact that he went out occasionally and at stated intervals for the purpose of taking exercise and fresh air, under the instructions of his physician, would not be sufficient to prevent plaintiff from recovering in this action.'

"This instruction was given over the objection of the defendants, and the ruling is assigned as error. That is the principal ground urged here for reversal.

"We are of the opinion that the court correctly interpreted the contract, and that the instruction complained of was not in conflict with the law which controls. Cases cited on the brief fully sustain that view: *Jennings v. Brotherhood,* 44 Colo. 68, 96 Pac. 982, 130 Am. St. 109, 18 L. R. A. (N. S.) 109; *Breil v. Claus,* 84 Neb. 155, 120 N. W. 905, 18 Ann. Cas. 1110, 23 L. R. A. (N. S.) 359; *Metropolitan Plate Glass & Casualty Ins. Co. v. Hawes,* 150 Ky. 52, 149 S. W. 1110, 42 L. R. A. (N. S.) 700; *Ramsey v. General Accident Ins. Co.,* 160 Mo. App. 236, 142 S. W. 763."

The verdict for the plaintiff was there held to be sustained by the evidence, though we think the recitals of the opinion, as to the plaintiff's journeyings from home, were more extended than in this case. It is to be

noticed that the language of the policy there involved
did not contain the word "strictly" in connection with
"continuously", as in the policy here in question, which
might seem to call for a somewhat more liberal con-
struction, but it did contain the words "within the
house where he shall be regularly visited by a licensed
physician," which would seem to call for a rather more
strict construction of the language there involved than
the provision here in question calls for, its words being
"confined within the house and therein be under the
regular care of a legally qualified physician." Man-
ifestly, one can be under the care of a legally qualified
physician without the physician continually actually
personally visiting the patient at his home.

In *Breil v. Claus Groth Plattdutschen Vereen*, 84
Neb. 155, 120 N. W. 905, 23 L. R. A., (N. S.) 359, there
was drawn in question a claimed continuous confine-
ment sick benefit under an insurance clause in the form
of a by-law, reading as follows:

"Every member of the society is entitled to sick
benefits if his sickness is such that the member must
remain constantly in the house and under the care and
treatment of a registered physician."

The plaintiff, during his claimed continuous confine-
ment sickness, went to a hospital where he was op-
erated upon and where he remained for a period of
two weeks for treatment. He then went to his home,
where his physician thereafter visited him. He went
out into his yard occasionally and went, from one to
four times each week, to his physician's office. He also
returned to the hospital for a few weeks and under-
went additional operations. He then spent a couple
of months at his home and returned once more to the
hospital. Holding that the plaintiff was entitled to
compensation as for being "constantly in the
house," the court made the following observations:

"The rules and regulations of the defendant association constitute the agreement between the parties, and, in construing it, it is necessary to give force to the meaning which the parties evidently intended the words used should have. We are convinced that the only interpretation which may be given to this contract is that the defendant intended to pay to its members a weekly benefit during sickness, provided the sickness was such as would disable the member from departing from the house for the purpose of attending to the ordinary affairs of life. That a person 'must remain constantly in the house' does not necessarily mean that one must remain perpetually within the four walls of a house. Within the meaning of the by-law quoted, one is confined to the house by sickness if his condition is such that he is unable to attend to the ordinary affairs of life and is required to remain in the house, except when making necessary visits to his physician. It cannot be said that a patient is not confined to his house constantly during an illness, which is characterized by recurring periods of severity, although at intervals he may occasionally step into his yard, or make visits to his physician, or other short and unusual trips; he at all times being unable to resume the ordinary duties or pleasures of life.''

In *Ramsey v. General Accident, Fire & Life Ins. Co.*, 160 Mo. App. 236, 142 S. W. 763, there was drawn in question a claimed continuous confinement sickness indemnity under an insurance clause reading as follows:

" 'Illness indemnity, at the rate of one hundred dollars per month for the number of consecutive days, after the first week, that the insured is necessarily and continuously confined within the house, and therein regularly visited by a legally qualified physician.' ''

The evidence showed the plaintiff, during his claimed continuous sickness confinement, going and traveling about fully as much as Miss Stewart, but, like her, always for the purpose of checking and curing his affliction. It is to be noted, that he was to be ''therein reg-

ularly visited by a legally qualified physician." Holding that the plaintiff was entitled to recover as for continuous confinement sickness, the court observed as follows:

"The position taken by defendant is, in effect, that the policy means that an assured must *literally* and actually be confined within the walls of a house *all* the time. We think that position untenable. We think that the contract should have a reasonable construction. And an assured who may be attacked with serious illness at his hotel away from home and is advised by a physician, who is called, that he should be taken home, and is transported in a Pullman car, where he may be accommodated with a bed, and who on arriving home finds that he will be compelled to undergo an operation by skilled surgeons in a nearby city, goes there, and is operated upon and attended by them daily by being taken to them in a carriage from his hotel near by, and occasionally walking to them, when able, being taken home, yet under the treatment of a physician, and confined within his house, except occasionally sitting on the porch and being once driven down to his place of business, though not taking part in business matters, and at another time to a physician's office, but with these exceptions, of short duration, being in the house and much of the time in bed, is within the protection of the policy."

The following cases, dealing with continuous confinement sickness indemnity insurance provisions, we think, are in harmony with the views expressed in the above quotations: *Mutual Benefit Ass'n v. Nancarrow*, 18 Colo. App. 274, 71 Pac. 423; *Jennings v. Brotherhood Accident Co.*, 44 Colo. 68, 96 Pac. 982; 130 Am. St. 109, 18 L. R. A. (N. S.) 109; *National Life & Accident Ins. Co. v. King*, 102 Miss. 470, 59 South. 807; *Hoffman v. Michigan Home & Hospital Ass'n*, 128 Mich. 323, 87 N. W. 265, 54 L. R. A. 740; *Olinger v. Massachusetts Protective Ass'n*, 278 S. W. (Mo. App.) 86; *Metropolitan Plate Glass & Casualty Ins. Co. v.*

*Hawes,* 150 Ky. 52, 149 S. W. 1110, 42 L. R. A. (N. S.) 700; *Aetna Life Insurance Co. v. Willetts,* 282 Fed. 26.

Counsel for the casualty company cite and rely upon the following decisions: *Sheets v. Farmers' & Merchants' Mutual Life & Casualty Ass'n,* 116 Kan. 356, 225 Pac. 929; *Reeves v. Midland Casualty Co.,* 170 Wis. 370, 174 N. W. 475; *Cooper v. Phoenix Accident & Sick Benefit Ass'n,* 141 Mich. 478, 104 N. W. 734; *Pirscher v. Casualty Co. of America,* 131 Md. 439, 102 Atl. 546; *Bruzas v. Peerless Casualty Co.,* 111 Me. 308, 89 Atl. 199; *Sawyer v. Masonic Protective Ass'n,* 75 N. H. 276, 73 Atl. 168; *Dunning v. Massachusetts Mutual Accident Ass'n,* 99 Me. 390, 59 Atl. 535; *Rocci v. Massachusetts Accident Co.,* 222 Mass. 336, 110 N. E. 972, Ann. Cas. 1918C, 529; 226 Mass. 545, 116 N. E. 477.

While in some of these cited cases observations are made seemingly lending support to the contentions made in behalf of the casualty company, we think all of them, except two or three, when critically read, are distinguishable from the case before us. It seems to us that the decided weight of authority applicable to the facts of this case, both in reason and numbers, supports the contentions here made in behalf of Miss Stewart.

It seems to us that a sickness confinement which compels a patient to be within doors constantly, except during the time of visits of short distance and duration to his physician's office for treatment, and periods of occasional exercise in the open air, all in pursuance of the physician's directions, and at all times, so out of the house, necessarily accompanied by another person, and all such time spent out of the house being for the ·sole purpose of looking to the cure of the patient's affliction, such time of confinement and restricted movements of the patient should be con-

sidered as "strictly and continuously confined within the house and therein be under the regular care of a legally qualified physician," within the meaning of this and other similar health insurance clauses.

The judgment is therefore affirmed.

TOLMAN, C. J., ASKREN, and FULLERTON, JJ., concur.