266 P.2d 1082

**OCCIDENTAL LIFE INS. CO.**

v.

**BOCOCK.**

No. 5827.

Supreme Court of Arizona.

Feb. 16, 1954.

Conner & Jones, Tucson, for appellants.

Udall & Udall, Tucson, for appellee.

PHELPS, Chief Justice.

Plaintiff-appellee, Helen F. Bocock, commenced this action in the superior court

of Pima County to recover from defendant-appellant, Occidental Life Insurance Company of California, upon the provisions of a group insurance health and accident policy issued by it covering employees of the University of Arizona, including plaintiff. A trial upon the merits was had before the court sitting without a jury, resulting in a judgment awarding plaintiff the sum of $225 from which defendant appealed to this court. The parties hereto will be hereinafter referred to as plaintiff and defendant as they appeared in the trial court.

The pertinent provisions of the policy are as follows:

"Part II. Sickness Indemnity. If the Insured shall by reason of sickness be wholly and continuously disabled and prevented thereby from performing any and every duty pertaining to his or her occupation and shall be under the weekly care of a licensed physician or surgeon, the Company will pay indemnity at the rate hereinafter stated for the number of consecutive days of disability, beginning with the eighth day of disability, and continuing for not more than 52 weeks for any one sickness. * * *"

"Part IV. Vacation Period or Leave of Absence. If during any vacation period or leave of absence the physical condition of the Insured for any period is, as the result of accident as provided in Part I, such that he or she would have been totally disabled if school were in session, then that Insured shall be considered totally disabled during that period and full accident indemnity will be paid as specified in Part I but in the event disability is the result of sickness, as provided in Part II, then sickness indemnity as specified in Part II will be paid only during the period after the first week in which the Insured is necessarily and continuously confined within the house and attended weekly therein by a licensed physician or surgeon."

During the vacation period of 1952, to wit, on July 9, plaintiff suffered a gall bladder attack and thereafter on July 18 underwent surgery therefor, remaining in the hospital until July 23 when she returned to her home. She remained at home and was cared for by another nurse with whom she lived until she returned to work on September 1 when she resumed her duties as head nurse of the infirmary at the University. During the period she was at home she was not visited in the home personally by her doctor but was in telephonic communication with him, under his instructions to call him once a week during the period; she was driven to his office by her associate nurse for a checkup and report on August 1 and August 18; on one occasion she was driven in the automobile to a neighbor's house and sat in the car and visited with such neighbor for a few minutes; on two occasions she was driven in the car to market and sat in the car

while groceries were purchased. She managed to spend at least an hour a day, if possible, in the sunshine. She made it a practice to walk in the yard a little while each day. Walking, sunshine and fresh air were prescribed by her doctor as proper post-operative procedure.

There are no disputed facts in the case and the rights of the parties must rest upon the interpretation given to the following language used in Part IV of the policy, to wit:

" * * * sickness indemnity as specified in Part II will be paid only during the period after the first week in which the Insured *is necessarily and continuously confined within the house and attended weekly therein by a licensed physician or surgeon.*" (Emphasis supplied.)

The construction of the "indoor clause" above set forth is the only matter presented for our determination.

The plaintiff contends that said "indoor clause" of the policy should be liberally construed in accordance with the majority rule in this country. Defendant insists that the language used is unambiguous and means what it says. It further urges that the case of Mutual Benefit Health & Accident Ass'n v. Ferrell, 42 Ariz. 477, 27 P. 2d 519, 524, is decisive of the issues in this case. Although the "indoor clause" construed in the policy in the Ferrell case, supra, is similar to that used in the policy

here involved it is not identical by any means and there is a considerable difference in the policies as a whole and certainly a wide divergence in the facts of the two cases. In arriving at the meaning of the "indoor clause" (Part H) of that policy the court very properly construed it in the light of the other provisions thereof, to wit, Part I which provided for the payment of indemnity to the insured when not continuously confined indoors during the period of illness. It did require, however, that the insured must have regular medical attention, and provided that said disease must necessitate total disability and total loss of time. The facts in that case showed that defendant traveled extensively over the United States during the time for which he claimed indemnity.

The court said in that case that if it were to give to the phrase "continuously within doors" a meaning other than that it required the insured to be literally confined in the house at all times, it would render Part I thereof nugatory. The court discussed Reeves v. Midland Casualty Co., 170 Wis. 370, 174 N.W. 475, which gave a similar clause a strict construction and denied recovery where the insured left the house for the purpose of receiving treatment from a physician at places other than the house. It also discussed the case of Mutual Benefit Health & Accident Ass'n v. McDonald, 73 Colo. 308, 215 P. 135, which took the opposite view and declared that the language used must be liberally construed and

held that the vital point in the provision construed was the total disability of the insured, and that if he were totally disabled it could make no difference in the risk whether he were literally confined to the house or departed therefrom repeatedly.

The policy in the instant case does not compel the conclusion reached in the Ferrell case, supra. Part II of the policy in the instant case provides for coverage during the period the University employees are engaged in the discharge of their respective duties and provides that if the insured by reason of sickness be wholly and continuously disabled and prevented thereby from performing any and every duty pertaining to his occupation and shall be under weekly care of a licensed physician or surgeon the company will pay the indemnity provided in the policy, etc.

Part IV thereof designed to cover vacation periods provides that in the event of sickness during such vacation period, the insured shall be paid

" * * * only during the period * *

in which the Insured is necessarily and continuously confined within the house and attended weekly therein by a licensed physician or surgeon."

Under the provisions of Part II of the policy no "indoor confinement" is imposed. In Part IV thereof it is imposed as a condition precedent to recovery.

It is conceded by counsel both for plaintiff and defendant that the cases are not in harmony and that well-reasoned cases may be found on both sides. Under a decided majority the rule of liberal interpretation is given to "indoor clauses" in such policies allowing recovery even though there is a failure of strict adherence to the "indoor" requirement.

In the case of Stewart v. Continental Casualty Co., 141 Wash. 213, 250 P. 1084, 1085, 49 A.L.R. 960, the supreme court of Washington construing virtually the same provision as this court had before it in the Ferrell case, supra, came to an opposite conclusion. The Washington court said:

" * * * The words, 'confined within the house,' or 'confined to the house,' have seldom been taken by the courts in their literal meaning. * * * "

The court further said in quoting with approval from the case of Breil v. Claus Groth Plattdutschen Vereen, 84 Neb. 155, 120 N.W. 905 23 L.R.A.,N.S., 359:

" 'The rules and regulations of the defendant association constitute the agreement between the parties, and, in construing it, it is necessary to give force to the meaning which the parties evidently intended the words used should have. We are convinced that the only interpretation which may be given to this contract is that the defendant intended to pay to its members a weekly benefit during sickness, provided the sickness was such as would disable the member from departing

from the house for the purpose of attending to the ordinary affairs of life. That a person "must remain constantly in the house" does not necessarily mean that one must remain perpetually within the four walls of the house. Within the meaning of the by-law quoted, one is confined to the house by sickness if his condition is such that he is unable to attend to the ordinary affairs of life and is required to remain in the house, except when making necessary visits to his physician. It cannot be said that a patient is not confined to his house constantly during an illness, which is characterized by recurring periods of severity, although at intervals he may occasionally step into his yard, or make visits to his physician, or other short and unusual trips; he at all times being unable to resume the ordinary duties or pleasures of life.' "

The court in the Breil case, supra, was construing the phrase "must remain constantly in the house" whereas in the Stewart case, supra, it was construing the phrase be "strictly and continuously confined within the house and therein be under the regular care of a legally qualified physician". We think the difference is immaterial. In the case of Ramsey v. General Accident Fire & Life Ins. Co., 160 Mo.App. 236, 142 S.W. 763, where the contract provided that the insured should be compensated at the rate of $100 per month for the number of consecutive days he was "necessarily and continuously confined within the house, and therein regularly visited by a legally qualified physician" the court said:

"The position taken by defendant is, in effect, that the policy means that an assured must literally and actually be confined within the walls of a house all the time. We think that position untenable. We think that the contract should have a reasonable construction. And an assured who may be attacked with serious illness at his hotel away from home and is advised by a physician who is called, that he should be taken home, and is transported in a Pullman car, where he may be accommodated with a bed, and who on arriving home finds that he will be compelled to undergo an operation by skilled surgeons in a nearby city, goes there, and is operated upon and attended by them daily by being taken to them in a carriage from his hotel near by, and occasionally walking to them, when able, being taken home, yet under the treatment of a physician, and confined within his house, except occasionally sitting on the porch and being once driven down to his place of business, though not taking part in business matters, and at another time to a physician's office, but with these exceptions, of short duration, being in the house and much of the time in bed, is within the protection of the policy."

In the case of Purcell v. Washington Fidelity Nat. Ins. Co., 146 Or. 475, 30 P.2d 742, 747, construing a provision of an insurance policy providing that the insured shall be confined continuously within doors and require regular visits therein by a legally qualified physician provided said disease results in a total disability and a total loss of time the court said:

"Although the defendant contends that the policy is free from any ambiguity, it admits that clauses similar to the one under consideration have received constructions 'tending to support respondent's views' by the United States Circuit Court of Appeals for the Third District, and by the Supreme Courts of Arkansas, Colorado, Texas, and Washington. * * *"

The court then said:

" * * * when the defendant wrote this policy it knew of the construction which courts of high standing had placed upon the phraseology which it selected. If there are decisions in conflict with those which we are now mentioning, then an ambiguity exists, and, under the rules aforementioned, plaintiff must be given the benefit of the doubt. * * *"

The court quoted with approval from the case of Federal Surety Co. v. Waite, Tex. Civ.App., 297 S.W. 312, where the court was construing the clause "strictly and continuously confined within the house by reason of an illness" the following:

" 'The purpose that must have been in the mind of the insured at the time of the taking out of her policy was that she would thereby be indemnified for loss of time for the period specified if occasioned by sickness which would totally incapacitate her from performing her usual work. * * * We think it is evident, as said in one of the cited cases, that the requirement that the insured must be confined within her house or home is but evidentiary. The only legal purpose for the insertion of such a requirement would seem to be that thereby a total loss of time and incapacity to labor would be shown with certainty.' "

The supreme court of California in Carabelli v. Mountain States Life Insurance Co., 8 Cal.App.2d 115, 46 P.2d 1004, in construing a policy requiring that the insured be continuously confined within doors and visited therein regularly every seven days by a legally qualified physician, should be strictly construed and that a liberal construction in favor of the insured can only have application when the policy presents some uncertainty or ambiguity, and refused indemnity to the insured where it was shown that the plaintiff was able to get around and regularly took extended walks away from his home upon the advice of a physician, that he was not visited by a physician once in every seven days but the plaintiff had gone to the doctor's office alone on sixteen to twenty occasions. On

one occasion the doctor took a trip of five weeks' duration during which he did not see plaintiff at all. This case was decided June 27, 1935.

On November 14 of the same year the court had before it Norager v. Mountain States Life Ins. Co., 10 Cal.App.2d 188, 51 P.2d 443, construing identically the same language. The court distinguished the latter case from the Carabelli case, supra, on the fact situation and held that the insured was entitled to recover where the evidence showed that he suffered a paralytic stroke just as Carabelli had. The only difference in the cases was in the fact situation following the stroke. In the latter case the insured was driven by his nephew in an automobile to the barber shop on some occasions and on others after he became able to do so, he walked to the shop but was attended by someone else to support and guide him, but it did show that the plaintiff at all times was totally disabled. The court affirmed the judgment of the lower court in allowing recovery.

■ In accordance with the last decision of the California court the following cases may be cited: Newton v. National Life Ins. Co., 161 La. 357, 108 So. 769; Interstate Business Men's Accident Ass'n v. Sanderson, 144 Ark. 271, 222 S.W. 51; Baker v. State's Accident Ins. Co., 200 Ill. App. 473; Jentz v. National Casualty Co., 52 N.D. 688, 204 N.W. 344; Columbian Relief Fund Ass'n v. Gross, 25 Ind.App. 215, 57 N.E. 145; Van Dusen v. Interstate Business Men's Ass'n, 237 Mich. 294, 211 N.W. 991, and many others. The fact situation in these cases indicate that in each and all of them the "indoor clause" was liberally construed and the insured was permitted to recover notwithstanding the fact that he left the confines of the house for different purposes. We believe that the restrictive clause in the policy in the instant case requiring confinement in the home as a condition precedent to recovery should be liberally construed. It was said in Equitable Life Assur. Soc. of United States v. Adams, 259 Ky. 726, 83 S.W.2d 461, 464, that:

"* * * It is the duty of the courts to take the words of an insurance policy as they are found in it, and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed, * * *."

■ We think, that giving the above language used in Part IV of the policy here involved that kind of construction, it was not understood by the insured nor contemplated by the defendant that she was to remain within the house at all times during her illness. Certainly not when her speedy recovery depended in some degree upon her following the advice of her physician to take walks and get out into the sunshine and fresh air. We are further of the view that it does not do violence to the language used in this provision of the policy to hold that it is not to be taken

in its strictly literal verbiage. As has been expressed by many cases following the majority rule the provision has reference to the extent and seriousness of the illness rather than to a course of conduct of the assured.

Defendant, in putting the confinement clause in the policy here involved as we view it, could have had no other purpose than to provide a measuring stick by which it could be determined if the insured was wholly and continuously disabled and prevented thereby from either performing her duties in her housework; from performing the ordinary tasks of life, or from doing those things which people ordinarily do during vacation periods. There is no intimation that plaintiff was a malingerer. The record shows that she was in bed during this period at least 70% of the time and was in the house 95% of the time. Only on three occasions did she leave the house for a purpose that was not in accordance with the doctor's instructions and for the purpose of enabling her to more rapidly recover from her operation. These were on the one occasion when she was driven to a neighbor's house and there sat in the automobile and visited with the neighbors for a few minutes. The other two occasions were when she was driven to the market in an automobile by someone where she sat in the car during the time that the other party was shopping. She did not work at all during the period involved and it is admitted by the defendant that she was totally disabled to perform any kind of work.

We have been able to find but few cases, and they represent the minority rule, where recovery has been denied under a fact situation similar to the one in the instant case. One court said that the difference in the interpretation given these "indoor clauses" was more apparent than real. We are inclined to agree with this statement. The Carabelli and Norager cases, supra, decided by the California Supreme Court are indicative of the accuracy of this statement where the clauses interpreted were identical but the facts were different. In jurisdictions where these and similar clauses are liberally construed where the insured demeans himself in a manner that indicates that he is not totally disabled from performing his work the courts refuse to permit a recovery. The case of Franklin Life Ins. Co. v. Lewis, 36 Ala.App. 313, 55 So. 2d 518, illustrates this fact.

We believe the Ferrell case, supra, is easily distinguishable from the instant case because of the difference in the fact situations and in the terms of the two policies and that even under a liberal construction of the terms of the policy in that case the court could easily have reached the same conclusion. However, we are of the view that the decision in that case should be overruled to the extent that it held in effect that "indoor clauses" in such policies must be strictly construed and that infractions thereof must defeat recovery.

In accordance with views hereinabove expressed and the reasons given therefor, judgment is affirmed.

STANFORD, LA PRADE, and WINDES, JJ., concur.

UDALL, J., did not participate in the determination of this appeal.