No. 10,341.

MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION *v.* McDONALD.

Decided May 7, 1923.

Action on a health and accident policy.  Judgment for plaintiff.

*Affirmed.*

1.  CONTRACTS—*Construction.*  The meaning of any particular phrase in a contract is not to be determined as if it stood alone, but in connection with all other provisions, as a whole.

2.  INSURANCE—*Policy—Construction.*  An insurance policy, speaking generally, is to be construed the same as any other contract.

If the meaning is obscure, or words of doubtful meaning are employed, the presumption is against the insurer.

3.      *Health and Accident Policy—Construction.*  The principal object of a health and accident policy is the protection it affords, and in connection with this, limiting conditions and provisos in the policy are to be strictly construed against the insurer.

4.      *Policy—Construction.*  Where a clause in a contract of insurance is susceptible of two constructions, that one will be adopted which is most favorable to the assured.

5.   WORDS AND PHRASES.  There is no material difference between the phrases:  "confined to his house," and "confined within doors."

6.   INSURANCE—*Accident Policy—Construction.*  Where a health and accident policy provides for full indemnity for total disability "confining the insured continuously within doors," and total disability is admitted, the fact that insured left his home occasionally for medical treatment, would not preclude him from recovering full indemnity under the terms of the policy.

7.      *Policy—Construction.*  No construction should be put upon a limiting clause in an insurance policy which would make it inconsistent with another provision with which the insured must comply in order to be entitled to any indemnity.

*Error to the County Court of Arapahoe County, Hon. George W. Dunn, Judge.*

Mr. LOUIS P. ERNY, Mr. G. J. CLEARY, for plaintiff in error.

Mr. BENTLEY MCMULLIN, Messrs. NORTHCUTT & NORTH-CUTT, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff McDonald, a carpenter by occupation, living at Aurora, Colorado, held an accident and health policy of indemnity issued by the defendant company.  Among other things it provides that any accidental injury to the insured, resulting in *septicaemia,* shall be classed and paid

for as sickness or illness as set forth in paragraphs "H" and "I", which read:

"Part H. Confining Illness, Twenty-four dollars per week. For total disability of one day or more resulting from sickness originating after thirty days from date of this policy, and confining the insured continuously within doors, payment will be made as follows:"

The payment is at the rate of $24.00 per week not exceeding thirty weeks.

"Part I. Non-Confining Illness, twelve dollars per week. For total disability of one day or more, resulting from sickness originating after thirty days from date of this policy which does not confine the Insured continuously within doors, amount to be paid shall be one-half the amount allowed for confining illness, but not exceeding five weeks."

The plaintiff having received an injury resulting in *septicaemia,* sued for compensation in the sum of $852.00. The defendant admitted liability in the sum of $248.55. The trial to the court, without a jury, was on stipulated facts, and judgment thereon was for plaintiff in the sum of $780.00 and costs, of which $720.00 was for thirty weeks' loss of time under paragraph "H" at $24.00 per week, and $60.00 under paragraph "I" for five weeks at $12.00 per week. On this writ of error by the insurer, only questions of law are involved.

The salient facts are that on August 4, 1920, plaintiff was attacked and bitten by a ferocious and vicious dog, thereby sustaining bodily injuries which resulted in *septicaemia,* commonly called blood poisoning. As a result thereof, and independently of all other causes, the plaintiff was, on August 4, 1920, and ever since that time, and up to the beginning of this action, has been, totally disabled and prevented from attending to any business. He did not leave his home or go out of his house between August 4, and September 28, and during such period was treated by a physician at his house. On September 28, and thereafter, and until the complaint was filed, and approximately once each week, plaintiff left his home and

went to the office of his physician in the city of Denver, a distance of about six miles, for the sole purpose of receiving medical treatment for his injury. All the requirements of the policy as to proofs and other matters were met by the plaintiff. The defendant, as stated, admitted limited liability which it says was for the period of time from August 4, to September 28, 1920, under paragraph "H" at $24.00 a week, and five weeks' liability at $12.00 a week under paragraph "I", aggregating $248.55.

The material question in the case is as to the meaning and construction of the words in paragraph "H": "total disability * * * resulting from sickness, * * * and confining the insured continuously within doors", in connection or contrasted with, as defendant says, the words in paragraph "I": for total disability * * * resulting from sickness * * * which does not confine insured continuously within doors." The meaning of the phrase in controversy, as of any particular clause in any contract, is not to be determined as if it stood alone, but in connection with all other provisions, as a whole. It is sometimes said that a policy or contract of insurance is to be construed most strongly against the insurer since he selects the words of which it is composed. That is not an exact or accurate statement of the rule of law. Speaking generally, it is to be construed the same as any other contract. If the meaning is obscure, uncertain or ambiguous, or words of an equivocal or doubtful meaning are employed, the presumption is against the insurer, by whom the instrument is drawn, but when the words are so plain that there is no room for construction, the contract should not be so interpreted as to introduce an ambiguity, and then enforced in favor of the insured. The insured took out this policy as an indemnity against loss of time in case of total disability to pursue his usual avocation. That is the principal object of the contract. The protection which it affords is what the insured paid his premium for. It is in connection with this, the main object of the contract, that the meaning of its other subordinate or limit-

ing conditions and provisos should be determined. These conditions and provisos are to be "strictly construed against the insurer because their object is to limit the scope and defeat the purpose of the principal contract." *Jennings v. Brotherhood Acc. Co.,* 44 Colo. 68, 76, 96 Pac. 982, 18 L. R. A. (N. S.) 109, 130 Am. St. Rep. 109; *Boaz v. Travelers of America,* 69 Colo. 44, 49, 168 Pac. 1178; *Mutual Ben. Ass'n v. Nancarrow,* 18 Colo. App. 274, 71 Pac. 423.

The language is not always to be interpreted literally. No forced or unnatural meaning should be given. Sympathy with the insured, because of his disability, should not swing judgment in his favor, or give him compensation to which he is not, within the terms of the contract entitled. Refined reasoning of the insurer, by its seductive charm, must not be rewarded by withholding from the insured the fruits of the contract to which he is entitled. Where a clause in a contract of insurance is susceptible of two constructions, that one will be adopted which is most favorable to the assured. *Metropolitan Cas. Ins. Co. v. Bergheim,* 21 Colo. App. 527, 536, 122 Pac. 812.

There is no question as to the plaintiff's total disability. That is admitted. But in a plausible and ingenious argument, counsel for the insurer contend that the stipulated facts show that the insured was not "continuously confined within doors" during the entire period of time for which full indemnity was given. They say that the ordinary meaning of "continuously" is "without break, cessation. or interruption." Since the insured, after September 28, and until the beginning of this action, although during all that time he was totally disabled, went out of his house once each week, and rode in the street cars to the City of Denver for the sole purpose of receiving medical treatment, he, therefore, forfeited his right to full indemnity after his first visit. The insurer unquestionably had the right to insert such a limiting clause in its contract, and unless it is enforced by the courts as written, and as properly interpreted, a new contract by ju-

dicial construction is made for the parties which they did not, and had no intention to, make. We are told that insurance companies have learned from experience that sometimes unscrupulous policy holders practice malingery for the evident purpose of "living off the insurer" long after disability ceases, and it was for the purpose of discouraging protracted illness that such limiting clauses were inserted in policies of insurance, citing *Reeves v. Midland Casualty Co.,* 170 Wis. 370, 174 N. W. 475, 959. Without pausing to comment, we merely observe that if the sole object of this requirement of "continuous confinement" is to discourage malingery, its bearing is upon the element of disability which is admitted. It is only the meaning of the "confinement", not the "disability", clause that is here involved. These limiting clauses, however, should have a reasonable, not a harsh, construction, and it should be such as to prevent malingery, as well as to effectuate the principal object of the insurance contract. We are of opinion that the interruption or break, in the continuity of the confinement of the insured within doors, is not such a departure from the contract, or in such violation of its provisions, as to defeat a recovery of full indemnity under paragraph "H". While the precise question here involved may not have been before this Court, the principle involved in the Jennings, Boaz and Nancarrow cases governs this case. In the Nancarrow case payment of indemnity was to be made to the insured "if the plaintiff should be totally disabled and confined to the house". The court said: "The words 'totally disabled', as well as the words 'confined to the house', must receive a reasonable interpretation. * * * The total disability contemplated by the instrument, does not mean a state of absolute helplessness." If the same reasonable interpretation applies, as Judge Thomson said it does, to the words "confined to the house", then such confinement need not be without a break. It is true in that case the word "continuously" was not used, but the argument of the insurer there was the same as made here, that it was

intended to mean a constant restraint within doors without interruption. In that case the only interruption or break in the confinement was due to an occasional and temporary absence from the house by the insured for the purpose of receiving treatment at the office of his physician.

In the Jennings case the language of the policy, page 75, provided: "A disability, to constitute a claim for indemnity for sickness only, shall be continuous, complete and total, requiring absolute, necessary confinement to the house for not less than fourteen consecutive days * * *." If there is any difference between the meaning of this clause and the one now before us, the former is more strict and far-reaching, yet in the Jennings case the insured, during a considerable portion of the period for which he claimed sick benefits, was outdoors nearly every day by advice of his physician, when the weather was favorable, and he was not continuously or actually confined to his house or to his bed every hour and minute of the day. We do not think there is any material difference between the phrase: "confined to his house", and "confined within doors". The doctrine announced by our own Court is also declared in the following, among other cases: *Great East. Cas. Co. v. Robins,* 111 Ark. 607, 164 S. W. 750; *Baker v. State's Acc. Ins. Co.,* 200 Ill. App. 473; *American Assur. Co. v. Dickson,* 34 Ohio Cir. Ct. R. 313; *Dulany v. Fidelity & Cas. Co.,* 106 Md. 17, 66 Atl. 614; *Ramsey v. Genl. Acc. Ins. Co.,* 160 Mo. App. 236, 142 S. W. 763; *Interstate Bus. Men's A. Ass'n v. Sanderson,* 144 Ark. 271, 222 S. W. 51.

The phrase in the Sanderson case was: "to remain continuously and strictly within the house"—a more-emphatic statement than the one in the instant case. The insured, under directions of his physician, went out for a short time each day for the purpose of getting sunshine and fresh air. He was not prevented from recovery of full indemnity.

One of the cases on which the insurer relies is *Rocci*

v. *Mass. Accident Co.*, 222 Mass. 336, 110 N. E. 972, Ann Cas. 1918C, 529. A clause in the policy withheld full indemnity, unless it appear that "the insured, by reason of sickness is necessarily and continuously confined within the house." This is as strong as the language in this case. The court, on page 344, said:

"While it should not be given a constricted interpretation as applied to the subject matter, so as to exclude for example a transfer of a person seriously ill from his house to a hospital and back again or other imperative removals, it cannot be extended to include frequent changes from one house to another. * * * 'Within the house' naturally means one house * * * especially when construed with the next clause, which requires that the insured be 'therein regularly visited by a legally qualified physician' ".

The insured remained in his own house only two weeks, then went in a carriage to his sister's house in Roxbury, where he stayed two weeks, thereafter he was three weeks in the city hospital, three or four weeks in a different hospital, and then, after another period at home, went to Medford, a city several miles north of Boston, for two weeks, and thereafter was at another hospital in the south of Boston. The court properly said, under such a state of facts, the deceased was not "continuously confined within the house, and * * * therein regularly visited by a physician", with due regard to the meaning of the limiting words. Even the most liberal construction would not bring the case within the policy. It is a fair inference from the entire opinion that, in a case like the one before us, the Massachusetts court would hold that, within the fair meaning of these limiting words, the insured was "continuously confined within doors". Whether these quoted words are to be considered as "ultimate" or "evidentiary" facts, is not important. In either case, by fair construction, they do not preclude recovery of full indemnity where the insured occasionally goes out of his house for medical treatment for the injury in question.

A few illustrations will show the fallacy of the argu-

ment of the insurer. If an insured may not, without violating his policy, leave his house for any purpose, but must continuously or strictly stay within doors every moment of the period for which full indemnity is asked, then he could not leave it in case of fire or destruction, or even step out upon a porch or veranda for fresh air, or take "outdoor" treatment for tuberculosis, acting under the advice of his physician. If he is a farmer living in a cyclone region, and, seeing in the distance an approaching cyclone, he may not leave his house and run to the cyclone cellar. If he is living in bottom lands, subject to sudden overflow or flood waters, which, in the given case, swept his house into the swollen stream, he may not leave that moving house to perch in the protecting branches of a partly inundated tree on which the building has temporarily lodged. If he does either to save his life, in obedience to the first law of nature, he forfeits full indemnity under his health policy. These are extreme illustrations, but they show the necessity of applying reasonable, not harsh, unnatural, rules of construction to such words.

If there is any doubt about our conclusion, another clause of this policy, to which there is no reference in the briefs, entirely removes it. Immediately after the 16th paragraph is this provision: "*Additional Provisions.* (a) This policy does not cover death, disability, or other loss * * * while the Insured is not continuously under the professional care and regular attendance, at least once a week, of a licensed physician or surgeon, other than himself." Limiting clauses, as we have said, should be construed in connection with all other provisions of this contract, including the one just quoted. The latter makes it imperative for the insured to have such professional care and attendance. He is supposed to follow, and would be justified in obeying, his physician's advice and directions. The "care and attendance" are not required to be given in the house. It might be, as where some unusual surgical operation, or an X-Ray examination, is imperative, that

only at the physician's office or at a hospital could the patient receive their benefits; but, if the construction of the insurer is correct, the insured, even though so directed by his physician, if he left his house in Aurora to ride in a street car to Denver to undergo the operation or to submit to the examination, would forfeit his right to full indemnity from the moment of time he left his house to make this journey, even though during all the weeks within the time limit of the policy he was totally disabled to pursue his usual avocation.  No such construction should be put upon a clause of limitation as would make it repugnant to, or inconsistent with another provision of the same contract with which the insured must comply in order to be entitled to any indemnity at all.

Upon principle, as well as authority of our own and other appellate courts, the decision of the county court was right and its judgment is accordingly affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.