WILLIAM OLINGER, RESPONDENT, v. MASSACHUSETTS PROTECTIVE ASSOCIATION, APPELLANT.*

Kansas City Court of Appeals. December 7, 1925.

*Corpus Juris-Cyc References: Accident Insurance, 1CJ, p. 466, n. 50, 51.

*C. M. Kendrick* for respondent.

*Lathrop, Morrow, Fox & Moore, George J. Mersereau, Richard S. Righter* and *Paul Van Osdol* for appellant.

BLAND, J.—This is an action upon a policy of accident and health insurance. Plaintiff recovered a verdict and judgment in the sum

of $750, together with $55 penalty for vexatious delay and $250 attorney's fees. Defendant has appealed.

The policy provided that if plaintiff suffered from disease resulting in continuous total disability for at least five days, requiring the regular and personal attendance of a licensed physician, and confining the insured within the house or hospital, defendant would pay the insured $25 per week continuously during such disability, and that if plaintiff should be totally disabled by disease for at least five days but not confined within the house or hospital, defendant would pay for a period of such disability, not exceeding twenty-six weeks, $12.50 per week. The policy further provided "that the weekly indemnities provided by this policy collectively shall not cover a period exceeding sixty weeks in the aggregate."

Plaintiff claimed total disability confining him within the house and requiring the regular and personal attendance of a licensed physician from October 16, 1922, to December 20, 1923. During the progress of his illness the company paid him a total sum of $350 and when it came time for final settlement, it claimed that plaintiff's disability was of a non-confining character and that it owed him an additional sum of $400 only, making $750 in all. The company paid plaintiff said sum of $400 under such circumstances that it claims constituted settlement in full, but plaintiff claims it was merely a payment on account. It is unnecessary for us to go into this controversy, although a point is raised in reference to it, for the reason that we have reached the conclusion that plaintiff's illness was of a non-confining character and that he has been paid all that he was entitled to under the policy, and that for this reason defendant's point that its demurrer to the evidence should have been sustained, is well taken.

Plaintiff testified that for a great many years he had been a locomotive engineer and that at the time in controversy he resided in the City of Marceline. He became ill and was required to cease work on October 12, 1922. He consulted a physician at Marceline and was under his care for a short time when he was advised to see a specialist, Dr. Sutton, of Kansas City. He testified that he was treated by the Marceline physician at that physician's office. He first consulted Dr. Sutton at Kansas City on November 3, 1922; he came unaccompanied to Kansas City on the train, took a street car to the building in which Dr. Sutton's office was located, and went up in the elevator to the doctor's office and was treated by him. Dr. Sutton pronounced his illness to be cancer of the mouth. Dr. Sutton advised him to get all the open air he could. Plaintiff further testified that he remained in the house except when he would go to Kansas City for treatment and when he would walk up town from his home in Marceline; that this was a distance of four blocks; that between treatments while in Kansas

City he would "walk a little while and come back." He was asked "what would most subserve your comfort" and he replied that he "felt better by getting out and taking exercise;" that he suffers severe pain all the time and is required to take aspirin continually; that he has not obtained a night's rest in over two years; that when walking he has to stop and rest, "I walk a couple of blocks and I am all in—tired out;" that he was at all times able to walk around a little and go outside of the house except when he "was down for twelve days at home, I wasn't out of the house, but I recuperated up and went back to the doctor." In a report to the company, dated January 30, 1923, plaintiff stated—

"9. Has your disability strictly confined you to the house or hospital? No."

In his final report to the company he stated as follows:

"7. How many days were you confined to your house? I was unable to leave my house for *none* days, namely, from ——— 192— to —— 192—.

"8. How long were you totally disabled (meaning unable to transact any business or do any kind of work)? ——·——— days, namely from Oct. 16, 1922, to Dec. 20, 1923. (Italics ours.)

He testified that he did not mention the twelve days that he was unable to leave his home in his reports to the company because "it was so small an amount I didn't say anything about it."

Dr. Sutton testified that he advised plaintiff to keep out of doors as much as possible; that if a patient suffering as the plaintiff is put in bed, "they get the psychological effects, and they think I am laid out for good, and usually blow up." He would not say that plaintiff would be unable to perform any labor but that it would not be wise for him to follow his vocation; that at times plaintiff would call the doctor on the phone and tell him that he was unable to make the trip to Kansas City; that when plaintiff complained that he could not get out, the doctor would say to him," If you don't do it, you are gone, if you stay in bed and don't go out doors all you possibly can, you will be gone."

Defendant sent plaintiff seven blanks to be signed by the physician for the purpose of "securing report of the progress of your disability." The first of these reports made by the physician was on October 11, 1923, and the last one on September 5, 1923. In each one of these appeared questions 2 and 3; question 2 was to be filled out if plaintiff was totally disabled and continuously confined within doors during a period of time covered by the report, and question 3 was to be filled out if plaintiff was not continuously confined; each time the physician did not fill out No. 2 but filled out No. 3. Question No. 3 as filled out in each instance with dates left out, reads as follows: "He was totally disabled *but not continuously confined within*

*doors* from ——— to ———'' (Italics ours.) The doctor testified on the witness stand that he meant in making these reports that plaintiff was totally disabled but not continuously confined within doors during the time from the date he first treated him until the doctor signed the final report (No. 8) on December 20, 1923. All of the testimony as to plaintiff's disability was given by plaintiff's witnesses, defendant having no testimony on this subject.

From this testimony it appears that excepting the period of twelve days, when plaintiff was confined to his home but which he did not report to defendant, plaintiff was able to be out unassisted. Plaintiff testified that he was able at all times to walk around a little and to go outside of the house every day (except for the period of twelve days) and make trips alone to Kansas City on the train, during the entire two years of his illness. He was able to go to the doctor's office and none of his physicians treated him at his house, not even the local physician at Marceline. He reported to the company that he had not been confined to the house. He felt better when he exercised. His physician reported that he was not continuously confined to the house by his illness. There is no evidence that he was ever in a hospital. His physician testified that plaintiff was not continuously confined to the house. As to performing labor, the physician stated that he could not say that plaintiff was unable to perform any but that it would not be wise for him to follow his vocation.

Some point is made by plaintiff that he took exercise because the doctor told him that this was necessary in order to save his life. Plaintiff testified when asked what would most subserve his comfort, that he felt better by getting out and taking exercise. Assuming that he took exercise only because so advised by his physician, this would not change the situation for the reason his conduct shows that he was able to be about. There is no evidence whatever that he was confined to his house at any time except the twelve days that he testified to, and as to when this was, no date or time is given. Of course, the clause concerning confinement to the house does not mean that plaintiff must spend every minute in the house in order to recover. But in order to be entitled to $25 per week indemnity, he must have been confined to the house in a substantial sense. [Hays v. Benevolent Assn., 127 Mo. App. 195; Ramsey v. Ins. Co., 160 Mo. App. 236; Bradshaw v. Amer. Benevolent Assn., 112 Mo. App. 435, 438.]

The evidence shows that except for the short time mentioned there was no time when plaintiff was not able to be out of the house; not only to walk up town and see his physician in Marceline but to go to Kansas City unaccompanied and to take a street car to the doctor's office and to walk around between treatments and return home in the same way. It is apparent that plaintiff was not confined substantially to his home in the sense used in the policy. [Bradshaw v. Benevo-

lent Assn., supra; Taylor v. Loyal Protective Ins. Co., 194 S. W. 1055; Bucher v. Casualty Co., 215 S. W. 494.]

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

