**MASSACHUSETTS PROTECTIVE ASS'N, Inc., v. PICARD.\***

**No. 7379.**

Circuit Court of Appeals, Fifth Circuit.

April 9, 1935.

SIBLEY, Circuit Judge, dissenting.

———◆———

Richard B. Montgomery, Jr., of New Orleans, La., and Frederick H. Nash, of Boston, Mass., for appellant.

\*Rehearing denied —— F.(2d) ——.

Elias Goldstein, of Shreveport, La., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

In an action on the health feature of an insurance policy the insured, Dr. Picard, recovered judgment upon a trial held before the district judge without a jury. Pending this appeal by the insurance company the insured died, and his administratrix was substituted as appellee. The only material assignment of error is that the court erred in refusing to grant appellant's motion for a judgment in its favor.

The policy sued on insures against loss of time resulting from disease which causes total disability and requires the regular and personal attendance of a licensed physician. Clause E provides that the insurance shall not cover periods of disability exceeding 365 days in the aggregate; and it defines total disability to mean inability to engage in any gainful occupation. A "continuous disability rider," which was attached to the policy, is copied in the margin.[1] An additional premium was charged for the rider, but it was much less than the premium charged for the policy. The insured became totally disabled from arterio-sclerosis in September, 1931, and so remained until his death which occurred at some time subsequent to the entry of the judgment in October, 1933. A few days before the period of liability under the face of the policy expired on September 26, 1932, Dr. Picard had returned to his home in Shreveport, La., from an automobile trip he had taken to see a heart specialist at Galveston, Tex., on whose advice he continued on to Monterey, Mexico; but after his return from that trip he remained at home and in his house upon the advice and under the care of his two physician friends, Drs. Lloyd and Bodenheimer. Upon their advice he daily took a short walk of a block or two and a short automobile ride. On at least one occasion he visited his dentist in Shreveport. Dr. Lloyd prescribed these walks and automobile rides. Dr. Bodenheimer testified that in making his professional calls he sometimes drove by Dr. Picard's house and took him riding, and then to his, Bodenheimer's, office for examination and a short rest; that he took Dr. Picard out to give him relief from the monotony of remaining in the house all the time, as he thought short automobile rides had a soothing effect on Dr. Picard's nerves, and was beneficial rather than injurious.

It is suggested that confinement within the house was unnecessary because shortly before it began the insured was able to ride from Shreveport to Galveston in his automobile to see a specialist; but we do not think that this circumstance alone is sufficient to overcome the opinion of the doctors and the finding of the trial court that confinement became reasonably necessary before the expiration of the 365-day period covered by the face of the policy and before the effective date of the rider. That trip was taken by the insured in a vain search for relief, and occurred at a time when he had the right under his policy to make it. It cannot be held against him for anything done after the rider became effective. Appellant's real contention is that the insured, though totally and continuously disabled by disease, was not "confined within the house" within the meaning of the rider. Policies of this kind, though varying somewhat in phraseology, have been many times before the courts. A rather strict construction has been applied to them in the cases which immediately follow: Rocci v. Massachusetts Accident Co., 222 Mass. 336, 110 N. E. 972, Ann. Cas. 1918C, 529; Reeves v. Midland Casualty Co., 170 Wis. 370, 174 N. W. 475, 959; Buske v. Federal Casualty Co., 200 Wis. 18, 227 N. W. 239; Dunning v. Massachusetts Mutual Accident Association, 99 Me. 390, 59 A. 535; Sheets v. Farmers' & Merchants' Mut. Life & Casualty Ass'n, 116 Kan. 356, 225 P. 929; Richardson v. Interstate Business Men's Acc. Asso-

---

[1] "For total disability arising prior to the insured's sixtieth birthday and before the expiration of the 365 days described in Clause E of the attached policy, the weekly indemnity provided by said policy shall continue to be payable to the insured beyond said 365 days so long as he thereafter lives and is continuously totally disabled by accident, or similarly disabled and necessarily confined within the house by disease, in either case under the regular care of a licensed physician. Total disability due to tuberculosis, paralysis, blindness, insanity, paresis, cancer or locomotor ataxia shall however be construed as confining sickness hereunder irrespective of whether or not the insured be strictly confined within the house. In all other respects the terms, provisions, and conditions of said Policy remain the same."

ciation, 124 Kan. 685, 261 P. 565; Cooper v. Phoenix Accident & Sick Ben. Association, 141 Mich. 478, 104 N. W. 734; Mutual Ben. Health & Acc. Association v. Ferrell (Ariz.) 27 P.(2d) 519. On the other hand, a more liberal construction has prevailed among other courts of equal dignity. Jennings v. Brotherhood Accident Co., 44 Colo. 68, 96 P. 982, 18 L. R. A. (N. S.) 109, 130 Am. St. Rep. 109; Mutual, etc., Association v. McDonald, 73 Colo. 308, 215 P. 135; Metropolitan Plate Glass & Cas. Ins. Co. v. Hawes, 150 Ky. 52, 149 S. W. 1110, 42 L. R. A. (N. S.) 700; Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S. W. 750; Massachusetts Protective Association v. Oden, 186 Ark. 844, 56 S.W.(2d) 425; Newton v. National Life Insurance Co., 161 La. 357, 108 So. 769; Mackprang v. National Casualty Co., 127 Neb. 877, 257 N. W. 248; Ætna Life Insurance Co. v. Willetts, 282 F. 26 (C. C. A. 3). See, also, notes in 49 A. L. R. 965 and 61 A. L. R. 642. Nearly all the cases above cited which stand for a strict construction apparently realize that some exception must be recognized, as, for example, that the patient will be considered as continuously confined within his house although he be taken to a hospital for treatment upon the advice of his attending physicians. We do not go so far as to approve the liberal rule announced in some jurisdictions, but we do think that the clause in question should be so construed as to authorize the patient to be taken to his physician's office, or under his physician's orders to take short walks for exercise, or short rides in an automobile for fresh air, provided that the sole object and bona fide purpose is to benefit his health or alleviate his condition. As it seems to us the correct rule is laid down in Hines v. New England Casualty Co., 172 N. C. 225, 90 S. E. 131, 132, L. R. A. 1917B, 744, in approving a charge to the jury that the patient is entitled to indemnity while kept in his home on account of total disability and not allowed to leave "for any purpose not connected with his sickness. If during such illness he was able to visit friends or his place of business, he would not have been 'confined.' But if acting under the directions of the physician he called at his doctor's office, or the mere fact that he walked out under his directions as a part of the treatment the physician was giving him, this would not require the jury to find that he was not confined in his home." To the same effect is Garvin v. Union Mutual Casualty Co., 207 Iowa, 977, 222 N. W.

25, 61 A. L. R. 633. As the primary purpose expressed in the policy was to indemnify the insured against loss of time in the event he should become totally disabled as the result of accident or disease, in our opinion the rider ought to have been more explicit in its terms if the intention was to terminate the insurance if the insured, though acting upon the advice of his physicians and for his health's sake, should ever go beyond the four walls of his house.

The judgment is affirmed.

SIBLEY, Circuit Judge (dissenting).

Dr. Picard had arterio-sclerosis, a disabling disease which he and his physicians knew was incurable. He collected the $13 per day indemnity for total disability for 365 days promised in the main policy. His present claim is for the additional insurance granted by the rider which for an increase of premium was added to the main policy. The rider adopts many of the provisions of the policy, but for the most important provision, that fixing the coverage, it substitutes its own terms materially and purposefully different. The promise in the rider is to pay after 365 days the same daily indemnity during Dr. Picard's life if he is "continuously disabled by accident"—a contingency not here involved—or if "similarly disabled and necessarily confined within the house by disease, in either case under the regular care of a licensed physician." The main policy covered disability from disease although not sufficient to confine within the house, but only for an aggregate of 365 days, for a premium of $39 per quarter. The rider agrees to pay the same daily amount but during an indefinite period, for the much less premium of $11.70 per quarter. A comparison of the premiums makes it evident that the scope of the new risk must have been intended to be much restricted. A court has no more right to enlarge the agreed risk by artificial construction than it would have to increase the daily sum to be paid. To come under this rider the disability from disease must not only be continuous but must make confinement within the house necessary. The words are, within the house, not to the house. That confinement within the house means what it says is emphasized by the words which follow: "Total disability due to tuberculosis, paralysis, blindness, insanity, paresis, cancer or locomotor ataxia shall, however, be construed as confining sickness hereunder irrespective of whether or not the insured be

strictly confined within the house." The plain import of these words is that strict confinement is meant, and is relaxed only as to the seven named diseases. The words "necessarily confined within the house by disease" have a common and ordinary meaning which must be given them, and they do not include Dr. Picard's case. Besides the facts stated in the majority opinion as to what the physicians said and did, Mrs. Picard testified: "If the day is pretty we go for a little automobile ride, and he sits or reclines on the porch. * * * The maximum that he spends in the house is 22 hours and the minimum 20, except on bad days when he remains in the house during the entire day. * * * Dr. Picard has gotten out of the car while I was downtown shopping twice in the past six months. He would stand and look in the shop windows for a few minutes. * * * Dr. Picard never drives or attempts to drive the car. In September, 1932, we drove from Shreveport to Galveston in one day, from Galveston to Corpus Christi in one day, and from Corpus Christi to Monterey in one day, 250 to 300 miles per day. * * * He does not walk over two blocks. When we go to the dentist we drive in downstairs. The elevator is brought to the basement where he gets in. * * * Sometimes he stays out driving as long as one and a half to two hours." As to the proofs of claim, she testified: "He has sent the Insurance Company monthly proofs of claim. I have read them and sent them for him." They are in evidence in the doctor's own handwriting and each accompanied by a statement from his physician. In every one of them both Dr. Picard and the physician as to the question of confinement answer: "Confined within doors September 4, 1931, to January 15, 1932," a period ending ten months before that in controversy began. In May, June, and July, 1932, Dr. Picard states: "Am practically confined to the house." In the last proof made in September, 1932, immediately after the return from Monterey, on which the company declined to pay under the rider, both he and his physician again restrict the answer touching confinement within doors to the period from September 4, 1931, to January 15, 1932, and touching his present state the doctor says,

"Unimproved," and Dr. Picard describes it: "Take occasional automobile rides. Visit physician, dentist and barber. Play bridge occasionally. Rest afternoons between 1 and 4:30 P. M. Pursue such diversions as are necessary for my physical and mental health. Have abandoned practice." This last proof of claim states just what the other evidence shows. Dr. Picard was not in September, 1932, necessarily confined within the house by his disease. Going outdoors was not only not forbidden but was favored, and done every fair day. His disease, so far from necessarily confining him within the house, was such as to make it proper for him to go to walk and to ride every day. What he was physically able to do is shown by the hundreds of miles he rode on the trip to Monterey and back under a physician's direction. We may imagine an uninformed friend talking to an informed one:

"Q. Is Dr. Picard ill? A. Yes.

"Q. Is he wholly disabled from working? A. He is.

"Q. Is he confined to bed? A. No, he is up every day.

"Q. Is he necessarily confined within the house? A. No, he goes out every day. His physician advises him to."

The friend could not truthfully answer otherwise. Nor can a court.

The truth could not be changed by any number of judicial precedents. But in reality each of the conflicting cases cited is unlike this one either in its circumstances or in the policy words dealt with. Of course, a man too sick to be out of the house might conceivably have to go out in an emergency, for instance to go to the hospital, or to escape a fire, or even to get a change of climate. This would not forfeit the insurance under this rider; nor would a voluntary but unnecessary staying indoors ripen it. The rider postulates a disease which not only continuously disables but which also requires that the patient stay within the house. Whether he in fact stays in or not is only evidential of his real condition. Unless he is so bad off that he should stay in, or else has one of the seven maladies specially named, the rider does not cover his case.