EULA OTTEY, as Administratrix of the Estate of MARTELL R. OTTEY, Deceased, Appellant, *v.* NATIONAL CASUALTY COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, June 30, 1948.

*Louis H. Stallman* and *Oscar L. Meyerson* for appellant.

*Otho S. Bowling* for respondent.

EDER, J.  Plaintiff appeals from a judgment granting defendant's motion to dismiss the complaint made at the close of plaintiff's case.

The action was to recover sick benefits under a nonoccupational policy made by defendant to Martell R. Ottey (now deceased) and it was sought to recover the sum of $320, computed as follows: Plaintiff claims sick benefits due from February 1, 1947, to May 24, 1947, being a period of sixteen weeks at the rate of $20 per week.  The answer was a general denial and payment.

The policy was issued on August 30, 1944; the premiums were paid to and including March 1, 1947. On January 1, 1947, the insured became ill and was taken to Presbyterian Hospital; he was examined there and was told to return the following day and did so and remained there until January 9, 1947.

When he was admitted to the hospital on January 2, 1947, his condition was diagnosed as a cancer at the base of the tongue; he remained in the hospital until January 9, 1947; on that day he returned home, and remained in bed all day except for daily visits to the hospital for treatment, which kept him out a short time; the treatments consumed about five minutes in duration and he would return home immediately, the entire time away consuming about fifteen minutes a day.

On May 3, 1947, the insured suffered a hemorrhage and was readmitted to the Presbyterian Hospital where he remained until May 13, 1947, when he was transferred to Bellevue Hospital, where he was confined until May 22, 1947, when he was transferred to the House of Calvary, where he was confined until June 4, 1947, when he died of said illness.

During the entire period from January 1, 1947, to June 4, 1947, the insured suffered from said cancerous condition and was treated for the same and was confined in hospitals from January 2, 1947 to January 9, 1947, and from May 3, 1947, to the date of his death on June 4, 1947.

During the period from January 9, 1947, to May 3, 1947, the insured was confined to bed at home, except for the daily visits to the hospital for X-ray treatments.

The material facts are not disputed. At the close of plaintiff's case defendant moved for a dismissal. The motion was granted by the court below on the theory that under the " Illness Indemnities " clause of the policy, part II, section A, the defendant was liable for confining disability only so long as the continuity of the confinement remained uninterrupted and the defendant claimed there was an interruption of that continuity, and the court adopted the theory of the defendant's counsel in his construction of part II, section A, of the policy. This provision is entitled " Total Disability and Confinement " and provides for a payment not exceeding fifty-two consecutive weeks if — " the insured shall be so disabled and necessarily, strictly and continuously confined within the house and therein visited and attended by a legally qualified physician or surgeon (other than himself) at least once in every seven days ".

Defendant's trial counsel argued that the insured was confined within the house and therein visited and attended by a

legally qualified physician for the period from January 1 to January 9, 1947, and that thereafter, although disabled, he was not treated by a physician within the house; that the proof shows that sometime beginning in May of 1947, he was again confined within hospitals, and presumably treated by a physician, and that confinement was continuous for consecutive weeks; that, therefore, the insured was confined and treated within the house for only nine consecutive days, and eliminating the first two, the policy entitles the insured to two days' confining disability and four days' nonconfining disability, because that is the limit of the policy for nonconfining disability, and that that sum has been paid.

I am of opinion that the plaintiff was entitled to recover the sum claimed. In coming to this conclusion, it is my view, that although the policy provides for continuous confinement within the house and for attendance therein by a physician, this must receive a practical construction, rather than a literal one, and by such a construction substantial justice is done.

The insured was inflicted with an incurable malady, cancer, which required special treatment — the use of the X-ray — necessitating the application and use of special medical devices and appliances, and specialists in their use and operation, and also special treatment. We must look at reality. Such apparatus and operators are to be found in hospitals only; such special treatment cannot be given at home nor can such equipment be utilized in the home. I regard it as clear that the parties never contemplated or intended that the insured, in the situation and circumstances and the condition which here prevailed, should be required to remain confined to his home regardless of this situation and condition and that he was to be denied the right, in his desperate plight, to go to a hospital, the only qualified and proper place for such treatment. A sensible construction must be given. It is my view that the law will not, in the situation here presented, impose upon the insured compliance with the literal language of the policy (cf. *Harasymczuk* v. *Massachusetts Accident Co.,* 127 Misc. 344. See, also, *Hunter* v. *Federal Casualty Co.,* 199 App. Div. 223).

Therefore, I feel, that a practical construction should be given to this policy provision — " continuously confined within the house and therein visited and attended " by a legally qualified physician or surgeon, to mean where such a condition permits it, and it is possible, and that where it does not permit it and it is not possible, continuous confinement within a hospital is a

compliance and that the parties will be deemed to have so contemplated and intended.

To hold for a construction of literal compliance would deny to an assured, fatally stricken, the right to seek medical aid in the only place where he could obtain it, namely, in a hospital, and such a construction as the defendant contends for would compel him to helplessly await death. Such a construction is not only brutal and inhuman, but offends every concept of decency.

The real purpose of the mentioned provision of the policy with respect to visitation by a physician was obviously intended to guard against fraudulent claims and should accordingly be construed from the point of view of the purpose which it was intended to serve. The construction should, therefore, be a liberal one, to carry out the true spirit and object of the contract. The object being to guard against fraud, it must follow that where it is manifest that there has been no fraud, it would violate the purpose of the contract to give the clause a literal, narrow construction.

The late Chief Judge CRANE remarked in *Oppenheim* v. *Kridel* (236 N. Y. 156, 164), that the law is not insensible, a thing dead to all surroundings, that it is not merely a compendium of mechanical rules written in fixed and indelible characters but a living organism that grows and moves in response to the dictates and necessities of justice and does expand with reason.

The judgment should be reversed, with $30 costs, and judgment directed for plaintiff as prayed for in the complaint, with interest and costs.

HAMMER and HOFSTADTER, JJ., concur.

Judgment reversed, etc.