55 So.2d 518

**FRANKLIN LIFE INS. CO. v. LEWIS.**

4 Div. 199.

Court of Appeals of Alabama.

Dec. 4, 1951.

E. C. Orme, Troy, for appellant.

L. H. Walden, Montgomery, for appellee.

CARR, Presiding Judge.

The plaintiff below sued The Franklin Life Insurance Company for disability benefits under a contract of insurance for the period commencing December 10, 1948 and ending April 10, 1949.

In addition to the general issue the defendant pleaded a provision of the policy which is: "Total Disability. If illness before described shall wholly, necessarily and continuously disable and prevent the Insured from performing each and every duty pertaining to his occupation, the Company will pay, beginning with the ninety-first day of disability, the Monthly Illness Indemnity for the period the Insured shall live and be so disabled and necessarily strictly and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself."

The trial judge refused the general affirmative charge in defendant's behalf.

The jury found the issues in favor of the plaintiff. The court overruled defendant's motion for a new trial.

The question of critical concern is the action of the court in refusing the general affirmative charge to the defendant. This review relates to a construction of the quoted provisions of the policy and the application of the evidence thereto.

It appears, so far as we are able to find, that the appellate courts of this jurisdiction have not construed a provision of an insurance policy in this particular or identical verbiage. We have resorted to authorities from other jurisdictions and have given considerable time and study to this research. Of course the decision in each case must depend largely on its particular facts.

We find that the majority rule provides that the provisions of a health insurance policy requiring the insured to be confined to the house or within the house do not have to be literally complied with in order to entitle the insured to the benefits under the contract. However, the courts which adhere to the liberal construction doctrine are not in accord as to what amounts to a condition precedent to the insured's right to recover under such a clause.

Some of the opinions express what may be termed an extreme liberal construction.

Policies of insurance of the kind here involved are variously worded in respect to the "house confinement" clause. In some policies is found the phrase "at the house" or "to the house." Others express it in more restricted manner as "within the house." We find, also, that the qualifying words vary in different policies. Some contain only "continuously." To the strict and technical constructionist these terms convey different meanings.

The law is well established and generally applied that insurance policies are to be construed most favorably to the insured. This doctrine has no force or effect when ambiguity in the provisions of the contract is not present. Where the language is reasonably free from doubt, it is the duty of the courts to give effect to the contract as written.

In other words: "It is the duty of the courts to take the words of an insurance policy as they are found in it, and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed. * * *." Equitable Life Assurance Society of U. S. v. Adams, 259 Ky. 726, 83 S.W.2d 461, 464.

We do not think that we do violence to this well established doctrine in holding that the condition, "and necessarily, strictly and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself", is not to be taken in its strict literal verbiage.

It is our view that the provision has reference to the extent and seriousness

of the illness rather than a course of conduct in an effort to perfect a cure.

In other words, it requires an illness the nature of which will confine the insured to the house, and not the actual fact of staying in the house under all circumstances. There is no break in the continuity of confinement if the exigency of the malady and best method of treatment make it advisable and expedient that the patient be removed from within the house.

As applied to the indicated facts, we are in accord with the conclusions reached in the following cases. In each case benefits were allowed and the judgments were sustained by the appellate courts.

Insured became affected with acute glaucoma of both eyes. She was under the regular and continuous care of her physician. After a serious operation at a hospital she returned to her home where she was compelled to remain continually, except that she went occasionally to her physician's office some four blocks from her home, and at times took short walks by advice of her physician. Always when out of the house she was accompanied by an attendant. Stewart v. Continental Casualty Co., 141 Wash. 213, 250 P. 1084, 49 A.L.R. 960.

In Newton v. National Life Ins. Co., 161 La. 357, 108 So. 769, the insured frequently visited his physician's office.

In Interstate Business Men's Accident Ass'n v. Sanderson, 144 Ark. 271, 222 S.W. 51, the plaintiff took daily walks of about eight blocks and sometimes stopped to make purchases.

In Mutual Ben. Health & Accident Ass'n v. McDonald, 73 Colo. 308, 215 P. 135, the insured made weekly visits in a streetcar to his doctor's office six miles distant.

In Baker v. State's Accident Ins. Co., 200 Ill.App. 473, the plaintiff went to the office of her physician for treatment during the period of her illness for which she claimed benefits.

In Jentz v. National Casualty Co., 52 N.D. 688, 204 N.W. 344, the plaintiff spent a portion of his time going from one hospital to another. He lived a part of the time of his illness in a hotel and walked to his doctor's office for treatment.

During the time of his illness insured called at his physician's office to receive treatments, and under the advice of his doctor occasionally took exercise in the yard and on the pavement about and near in the open air for twenty minutes to one his residence, and at such times he was in the open air for twenty minutes to one half hour. Columbian Relief Fund Ass'n v. Gross, 25 Ind.App. 215, 57 N.E. 145.

In Van Dusen v. Interstate Business Men's Ass'n, 237 Mich. 294, 211 N.W. 991, the insured went out for exercise occasionally on the advice of his physician.

Plaintiff was confined to house except at intervals when he rode from his home to a physician's office for treatment. Mutual Benefit Ass'n v. Nancarrow, 18 Colo.App. 274, 71 P. 423.

In Ramsey v. General Accident F. & L. Ins. Co., 160 Mo.App. 236, 142 S.W. 763, it was held that under such a provision recovery was not defeated where the patient was occasionally out of his house and taken to a physician's office, and that the policy should be construed liberally and not literally.

To the same effect is American Life & Accident Ins. Co. v. Nirdlinger, 113 Miss, 74, 73 So. 875, 4 A.L.R. 871.

In Olinger v. Mass. Protective Ass'n, 221 Mo.App. 405, 278 S.W. 86, it was held that confinement to the house was to be construed in a substantial sense and not in such a literal sense as to require every moment to be spent within the house.

To like effect is Musser v. Great Northern L. Ins. Co., 218 Mo.App. 640, 266 S.W. 325.

See also, Metropolitan Plate Glass & Casualty Ins. Co. v. Hawes, 150 Ky. 52, 149 S.W. 1110, 42 L.R.A.,N.S., 700; Breil v. Claus Groth Plattdutschen Vereen, 84 Neb. 155, 120 N.W. 905, 23 L.R.A.,N.S., 359; Jennings v. Brotherhood Accident Co., 44 Colo. 68, 96 P. 982, 18 L.R.A.,N.S., 109; Hines v. New Eng. Casualty Co., 172 N.C. 225, 90 S.E. 131, L.R.A.1917B, 744; American Assur. Co. v. Dickson, 34 Ohio Cir.Ct. 313; Washington Fidelity Nat.

Ins. Co. v. Smith, Tex.Civ.App., 80 S.W.2d 413; Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S.W. 750; Ottey v. National Casualty Co., 192 Misc. 902, 81 N.Y.S.2d 534; Mass. Protective Ass'n v. Picard, 5 Cir., 76 F.2d 684; 7 Couch on Insurance, Sec. 1678, p. 5791.

In the case at bar, with the exception of the nature of the illness of the insured, the evidence is not in conflict relating to material aspects.

Appellee's physician testified that he saw the insured only three times. On each occasion the call was at the doctor's office. These dates were: November 11, 1948, March 28, 1949, and April 22, 1949. At these times the patient was suffering from "chronic myocarditis." The physician prescribed digitalis and phenobarbital. It was advised that the patient rest and refrain from physical overexertion.

Dr. Stewart examined the insured in June 1948 at the direction of the appellant. According to this physician's testimony he found that the insured was suffering from elevated blood pressure, but he did not find any evidence of chronic myocarditis, although the examination was made by means of an electrocardiogram.

Without dispute in the evidence the insured was never confined within the home on account of the illness of concern, and he was never attended by a physician therein.

During the time in question he left his home when he got ready and returned at his convenience and pleasure. He lived about seven miles from Brundidge, Alabama. He went to this city two or three times a week and to Troy, Alabama about once a week. He remained generally two or three hours on each visit. Most of the time he drove to these places in his automobile. He made frequent trips to and from Andalusia, a distance of about fifty-five miles from his home.

With reference to these various trips we copy from appellee's testimony:

"Q. Were you living on a farm? A. Most of the time I was.

"Q. I am talking about during this time, December 10, 1948 to April 10, 1949?

A. I was staying there most of the time. My wife was working at Andalusia. I would stay there a few days and go to Andalusia and stay a few days.

"Q. When did your wife start working at Andalusia,—before this time, or during this time? A. She has been there some over two years. I wouldn't say what time she started.

"Q. Been there over two years? A. Two years or a little over.

"Q. Would you have gone down there during this period of four months? A. I don't know.

"Q. That would be your judgment? A. I wouldn't say.

"Q. How often did you go to Andalusia while she was down there? A. Maybe once a week, or two weeks.

"Q. Who would go with you? A. Most of the time I would go by myself. Sometimes my mother would go with me.

"Q. Would you go down there in the same automobile you came to Troy and Brundidge in? A. Yes.

"Q. How far is it from Tennille to Andalusia where your wife was? A. Tennille?

"Q. From your home to Andalusia? A. About fifty-five miles.

"Q. Who drove when you went down there? A. I would drive some myself.

"Q. How long would it take you to get down there? A. About two and a half hours.

"Q. That is when you went by yourself? A. I had an old car. I just taken my time.

"Q. And that was the only thing that slowed you down? A. I wouldn't say. I wouldn't run fast if I had a new car.

"Q. Now did you ever go down there and get your wife and bring her back during this particular time? A. Yes, maybe about twice, I believe it was. I wouldn't bring her back during her week.

"Q. You would go down there and get her on the weekend? A. I have went down there and got her, Christmas and all.

"Q. Then when she went back to work you carried her back down there? A. Not every time. Sometimes she would catch the bus.

"Q. But you did carry her back several times? A. I carried her back two or three times."

The insured fished frequently in streams not a great distance from his home. "Anywhere I thought they were biting. I would try it all around." He attended hog sales at Brundidge and mule sales at Troy on numerous occasions.

We do not think that it is necessary for us to analyze the above delineated evidence to illustrate our view that the insured was not entitled to the benefits under the provision of the policy we are now reviewing. Our construction of this clause in the contract does not contemplate a coverage under the circumstances disclosed by the evidence in this case.

The defendant was due the general affirmative charge.

The judgment of the court below is reversed and the cause is remanded.

Reversed and remanded.