Walker & Hill, Opelika, for appellant.

160 So.2d 865

**UNITED INSURANCE COMPANY OF AMERICA**

v.

**Bobbie S. GARRETT.**

**5 Div. 742.**

Supreme Court of Alabama.

Feb. 13, 1964.

McKee & Maye, Opelika, for appellee.

COLEMAN, Justice.

This is an appeal by insurer from a judgment for insured in an action based on the disability provisions of an insurance policy.

The pertinent provisions of the policy recite as follows:

"UNITED
"INSURANCE COMPANY
"OF AMERICA

"Chicago 5, Illinois

"(A Legal Reserve Company)"

"(Hereinafter called The Company)"

"DOES HEREBY INSURE

"the person named in the Policy Schedule (hereinafter called the Insured) subject to the terms, provisions. and limitations of this policy: * * * (2) against loss of time commencing while this policy is in force, from sickness originating more than thirty days. after the Policy Date, hereinafter called 'such sickness'.

\*       \*       \*       \*       \*       \*

*"SICKNESS BENEFITS*

*"PART ELEVEN    CONFINING TOTAL DISABILITY BENEFITS FOR LIFE*

"If 'such sickness' causes continuous total disability and total loss of time,. and requires continuous confinement. within doors and regular and personal attendance therein by a licensed physician, surgeon, osteopath or chiropractor, other than the Insured, the Company will pay at the rate of the Monthly Benefit stated in the Policy Schedule for one day or more from the first medical treatment so long as the Insured lives and is so disabled and confined.

*"PART TWELVE    NON-CONFINING TOTAL DISABILITY BENEFITS FOR THREE MONTHS*

"If 'such sickness' does not require continuous confinement within doors but does cause continuous total disability and total loss of time and requires regular and personal attendance by a licensed physician, surgeon, osteopath or chiropractor, other than

the Insured, the Company will pay at ·the rate of the Monthly Benefit stated in the Policy Schedule for one day or more from the first medical treatment for the period the Insured is so disabled but not exceeding three months for any one sickness."

The monthly benefit is two hundred dollars.

Insured alleged that he was entitled to recover under Part Eleven.

Insured contends that he became totally disabled and confined within doors within the meaning of those terms as set out in Part Eleven of the policy which is quoted .above. He asserts that his total disability and confinement began August 20, 1959, and continued up until this action was commenced on July 7, 1960. The complaint recites that insurer has paid to the insured the sum of $200.00 per month for the three-month period beginning August 20, 1959, and ending November 20, 1959, but has failed to pay to insured anything with reference to the time subsequent to November 20, 1959.

It thus appears that insured sought recovery for seven months, roughly from November 20, 1959, to July 7, 1960, when the complaint was filed. Verdict and judgment were for insured and against insurer for $1,400.00.

Insurer says in brief:

"The testimony adduced by the appellee tends to show only that he was totally disabled. The record is entirely silent as to any fact or inference warranting a conclusion that the appellee was 'continuously confined within doors' within the meaning of the policy of insurance sued on. Indeed, the record discloses that appellee was in Florida fishing when his attorneys filed the complaint in this case claiming benefits under Part Eleven of the policy. (See chronology, page 5). Dr. Norton, appellee's physician, testified that Garrett did not have a confining illness. (R. 118). Therefore, the defendant was entitled to the affirmative charge, without hypothesis, asserting that the appellee could not recover, and its refusal was prejudicial error."

Other errors are assigned and argued but we forego consideration of them as being unnecessary.

The Court of Appeals has considered the meaning and effect of the confining disability clause in Franklin Life Insurance Company v. Lewis, 36 Ala.App. 313, 55 So. 2d 518, and Franklin Life Insurance Company v. Strength, 36 Ala.App. 422, 58 So. 2d 126; cert. denied 257 Ala. 167, 58 So. 2d 129. An exhaustive annotation on house confinement clauses appears in 29 A.L.R.2d 1411. A reading of the opinions cited in briefs makes it clear that in applying such clauses different courts have reached varied results, ranging from a so-called strict or literal construction to a so-called liberal construction.

In Sawyer v. Masonic Protective Ass'n, 75 N.H. 276, 73 A. 168, the court held that an insured was not confined where he went once or twice a week to the office of his physician for X-ray treatment, and on some occasions went beyond the office to a barber shop a quarter mile from his house, occasionally stepped into his store but did no work there, went to York Beach by advice of his physician, on the way consulted a specialist in Boston, and while at the beach was driven to a barber shop twice a week. The court said:

" * * * The disability is to be such as to ordinarily confine one to the house as a matter of necessity. As was said in the Scales case [Scales v. Masonic Protective Ass'n, 70 N.H. 490, 48 A. 1084], the confinement is not a condition precedent. If the insured were taken out because the house was on fire, or if he were carried to a hospital in an ambulance, it would not defeat a recovery; but that case does not decide that one can recover under this policy when he is totally incapaci-

tated to labor, yet in no sense confined to his house. To so hold would be to refuse to give any substantial meaning to the plain language used by the parties in making their agreement. The term used is to be given a reasonable interpretation. It is not to be read out of the contract." (75 N.H. at page 277, 73 A. at page 168)

A view more favorable to insured is expressed in American Casualty Co. v. Horton, Tex.Civ.App., 152 S.W.2d 395, where the court said:

"The contention that the policy provides for two types of disability, that is, 'Confining Total' and 'Non-Confining Total,' in our opinion, is an incorrect construction. Disregarding mere evidentiary provisions, we think it is obvious that, only one type, that is, 'total disability,' is provided, being the condition resulting from an accidental injury received under the circumstances mentioned in the policy, for which the defendant obligated itself to pay $50 per month, not exceeding twelve months, and $25 per month, not exceeding one month. However, in order to establish total disability, the policy requires that, the injured person 'shall be immediately and continuously confined within the house, not leaving it at any time for any purpose whatsoever and regularly visited therein at least once in each seven days by a licensed physician, and shall be wholly prevented from attending to any and every kind of work or business * * *.' The quoted stipulation, in our opinion, is evidentiary in nature, not the subject of contract, is against public policy, and should be disregarded." (152 S.W.2d at page 398)

We adopt the view stated as the majority rule by the Court of Appeals as follows:

"We find that the majority rule provides that the provisions of a health insurance policy requiring the insured to be confined to the house or within the house do not have to be literally complied with in order to entitle the insured to the benefits under the contract. * * *

* * * * * *

"In other words, it requires an illness the nature of which will confine the insured to the house, and not the actual fact of staying in the house under all circumstances. There is no break in the continuity of confinement if the exigency of the malady and best method of treatment make it advisable and expedient that the patient be removed from within the house." Franklin Life Insurance Company v. Lewis, supra, 36 Ala.App. at pages 314, 315, 55 So.2d at page 519.

The insured in the instant case is suffering from rheumatoid arthritis. As we understand the evidence, it will support a finding that he was totally disabled during the months here involved.

Insured stated in his notice of claim dated October 24, 1959, that he was not and had not been confined in a hospital, and

"10. On what date were you first able to leave the house for any purpose?

I leave the house every day for exercise. (Dr. Orders)"

Dr. Norton stated that insured was:

"Out of house every day for exercise."

Insured testified that he walked up stairs to an attorney's office to consult him about a check, and then deposited check in bank; that he went by automobile 135 miles to Cave Springs, Georgia, to consult his doctor; that insured sometimes drove up there himself and his wife drove him back; that he has driven there and back by himself; that he made "numerous" trips there since August 20, 1959; that on October 7, 1960, as we understand it, he drove all the way to Cave Springs and part of the way back; that insured and wife "for a long

time" went once every two weeks from Opelika to Montgomery to see their son and "whenever we went, I would drive"; that his wife would drive back; that on July 4, 1960, insured went by automobile on a five-day fishing trip four hundred miles to Florida; that insured and others "had to stay in the automobile until daylight"; that he fished with a spinning reel from a 14-foot boat and caught his limit of 25 fish on "both days" and reeled them in; that insured drove part of the way back. He testified further:

"Q Mr. Garrett, how often do you drive your automobile up here in town?

"A Oh, at least once or twice a week, or three times.

"Q And you were so doing that during the period of time from August 20th of '59 until the time you filed this suit, did you not?

"A Jake, it doesn't hurt me much to drive an automobile.

"THE COURT: Just answer his question.

"A O. K.

"Q In fact, driving a car is one of the easiest things you can do?

"A Why sure.

"Q Now, how often do you go across to the shop, as you call it, or garage, that Robbie is now operating?

"A Just about every day."

Insured testified further that he took walks around an old race track about ⅜ of a mile around on advice of his doctor. The doctor did advise exercise as part of the treatment.

We do not think that the policy provision which requires that insured suffer from sickness which requires continuous confinement within doors can be ignored, especially in view of Part Twelve which differs from Part Eleven only as to the confinement provision.

In the light of insured's own testimony which we have attempted to summarize, we are of opinion that it cannot be said that this insured was suffering from a sickness which required continuous confinement within doors, and that the court erred in refusing the affirmative charge without hypothesis which defendant requested.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.