Rance MARTIN and Irene Martin, d/b/a Martin Real Estate and Insurance Company, Appellants,

v.

GLOBE INDEMNITY COMPANY, Appellee.

No. 21265.

United States Court of Appeals Fifth Circuit.

May 13, 1965.

---

David E. Hicks, Lewis K. Cato, Cato & Hicks, Birmingham, Ala., for appellants.

James E. Clark, London, Yancey, Clark & Allen, Birmingham, Ala., for appellee.

Before RIVES, WISDOM, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This is an appeal from a judgment entered on a jury verdict for appellee indemnity company. The issues presented have to do with the refusal of the court to give requested charges of two types.

Appellants were the victims of a shell game. They were engaged in home building, and in the real estate and insurance business. A young lawyer who had grown up in their community and who had long been known to them, represented that he had confidential connections in Washington through which money could be made on investments in stocks and bonds. Appellants were attracted to the idea in view of the large and quick returns offered and commenced their dealings with the lawyer on January 12, 1960. They advanced $3,400 to him on that day, $2,500 three days later, and $1,900 on February 3, 1960. His modus operandi was to give them a note in an amount which included the advance plus the promised return with the note to be returned to him upon payment to appellants.

Repayments in varying amounts were made in February 1960. On March 2, 1960 a significant event, forming the background to this suit, occurred when appellants required a fidelity bond of the lawyer as a condition precedent to any further dealings with him. They went to see one of appellee's agents on the same day and applied for a bond in the amount of $15,000. The contract in question was issued on March 8 retroactive to March 2. In the meantime, on March 1, 1960, checks in the sums of $2,022 and $3,925, dated February 24, 1960 and payable by the lawyer to appellants were returned for insufficient funds. However, the testimony was that the fact of the return of these checks was not known at the time the bond was purchased.

Appellants advanced additional sums on March 2 and April 2, 1960. They were given a check in the amount of $5,000 dated April 8, 1960 by way of repayment but it was covered by cash on April 18, 1960. Appellants had advanced an additional $5,000 on April 13. They advanced additional sums on four occasions during the period ending May 3, 1960 and received one repayment in the same period. At about this time, they required an increase in the bond from a coverage of $15,000 to $30,000, and this was accomplished on May 4. The advances were being treated as investments, and appellants continued to make advances during May and June. In turn, the lawyer made two payments to them and gave notes and worthless checks to cover other repayments due. The last advance was made on August 23, 1960 with no further repayment being made until August 15, 1961. In this interim appellants were given worthless checks on six occasions and notes, which were never paid, on three occasions.

Apparently despairing, they went to Ohio to see the lawyer in August 1961 and were able to collect $12,000 from him. All told, appellants had advanced $58,420 under the scheme and were out of pocket $18,740 at this point, not counting promised profits. Still despairing, they visited the lawyer in Washington in June 1962 with respect to their investments and his failure to repay, and he promised to pay them within thirty days

but failed to do so. Some six weeks later they notified appellee that certain facts had come to their attention which indicated a possible loss under the bond.[1]

■ The surety contract under consideration was issued to appellants as an employer and was to cover any loss sustained by the employer by reason of any act of fraud or dishonesty on the part of the lawyer, called employee in the contract " * * * while in the service of the Employer in any position or at any location during the period * * *" of the contract. One of the assignments of error is based on the assumption that this portion of the contract is ambiguous in that the language " * * * while in the service of the Employer in any position * * *" might or might not embrace the role which the lawyer occupied with relation to appellants and out of which the loss arose. Assuming the ambiguity, appellants urge that the court erred in failing to give the following requested charges:

> "Gentlemen of the Jury, I charge you, doubtful language in an indemnity bond is to be construed in favor of the person indemnified."

> "Gentlemen of the Jury, I charge you, that contracts of Fidelity are to be construed more strongly against the insurance company in favor of the person indemnified when the language of the bond is susceptible to more than one meaning."

> "Gentlemen of the Jury, I charge you, that if a contract or indemnity bond is susceptible of more than one meaning then all fair doubts are to be resolved in favor of the party to be indemnified."

This assignment of error falls of its own weight. First, there is no ambiguity and the law of Alabama is quite clear that such a charge is improper in the absence of an ambiguity. Inter-ocean Casualty Co. v. Scruggs, 1930, 24 Ala. App. 130, 131 So. 549, cert. den., 222 Ala. 195, 131 So. 551; Franklin Life Ins. Co. v. Lewis, 1951, 36 Ala.App. 313, 55 So.2d 518. The contract language under consideration is clear. If the loss arose out of the employment relationship, appellants are covered. This was what the court charged the jury it was to decide. The fact of the relationship may have been doubtful but the contract language was not ambiguous.

■ Moreover, as we said in Sims v. Texas and New Orleans R. Co., 1959, 267 F.2d 37, a charge must be adjusted to the facts of a particular case. No factual basis for these charges appears in the record, and it is to be noted that the requested charges nowhere pointed to ambiguous language or words of doubtful import. They were mere requests to charge in the abstract, and the failure to give them was not error.

The other error advanced by appellants stems from an amendment to their pleadings, allowed during trial, wherein they alleged that appellee was estopped to deny the existence of the employer-employee relationship between appellants and the lawyer inasmuch as the surety contract itself designates the relationship as that of employer and employee. The contract does, as noted, name the lawyer and he is called the employee of appellants. The application for the bond gives his position as attorney for appellants, and states that he was to receive an income of $3,000 per annum. The binder describes the work to be performed as "Legal Work (Attorney)." Here again the requested charges were not adjusted to the facts.

---

[1]. In the view we take of the case we do not reach the contention of appellee that the errors asserted, even if error, were rendered harmless by the failure to appellants to sustain the burden of showing that they gave immediate notice to the surety, as the contract required, upon discovering facts indicating a possible loss.

The court took appellee's motion for a directed verdict on this ground under advisement and the verdict obviated the necessity of a ruling on it. Appellee claims the benefit of this alleged deficiency in appellant's case under the harmless error doctrine. Rule 61, F.R.Civ.P.

**4**

The settled law of Alabama in respect to such an estoppel is that the contract must have been made with reference to the particular relationship of employer and employee, and where so, and where the premium has been accepted, and the employer has thereby been induced to rely on the indemnity, the surety is estopped after the loss to dispute the existence of such relationship. See Craft v. Standard Accident & Insurance Company, 1929, 220 Ala. 6, 123 So. 271. The burden was on appellants under the estoppel defense to show that they were induced to make the advances on the faith of the bond. Hodges v. Kyle, 1913, 9 Ala.App. 449, 63 So. 761.

The employer-employee relationship stated in the bond must, of necessity, have formed the relationship out of which the loss arose; else there would be no causal connection between the loss and the coverage. The fact is that there was no evidence that appellants advised the indemnity company agent, either when the bond was purchased or when it was increased, that it was to cover the activities of the lawyer here involved. Consequently proof of inducement, one of the essential elements of an estoppel was lacking.

This defense is, of course, to be distinguished from the issue of whether on the facts the activities in question were embraced in the employer-employee relationship mentioned in the surety contract. The jury was instructed that appellants would not be entitled to recover if the lawyer occupied some status in the course of dealings other than one which would fall within the category of employer and employee, and his status was thus one of the key unresolved issues in the case. This issue along with the others, was properly submitted to the jury and the court did not err in refusing to give the requested charges.

This case was fully and fairly tried to a jury. The errors assigned are without merit. The judgment is affirmed.