Kenneth D. JOHNSON, Plaintiff,

v.

AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, Defendant.

Civ. A. No. 83–C–711.

United States District Court, D. Colorado.

April 11, 1984.

Aaron R. Clay, Delta, Colo., for plaintiff.

L. Tyrone Holt, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

This is an action by Kenneth D. Johnson against the American Family Life Assurance Company of Columbus (American Family) to recover on a "cancer insurance" policy which covered hospitalization and other medical expenses resulting from that disease. Before me at this time are the plaintiff's motion for partial summary judgment and the defendant's motions for summary judgment and judgment on the pleadings.

Plaintiff is a resident of Colorado. Defendant is a Georgia corporation authorized to do business in Colorado. The case was originally filed in the state district court for Delta County, Colorado, and was removed to this court. Jurisdiction is founded upon diversity of citizenship under 28 U.S.C. § 1332. The motions have been thoroughly briefed and oral argument would not materially assist in deciding them.[1]

On December 11, 1980, the defendant insurer issued to the plaintiff a cancer insurance policy covering him, his wife Catherine, and their children. Catherine Johnson developed cancer in 1981, was diagnosed as having brain cancer in March 1982, and died of cancer January 8, 1983. She was covered by the policy from the time she developed cancer until her death. Defendant insurer already has paid over $20,000 for services to Mrs. Johnson which admittedly were covered. At issue in these motions is a claim for $33,433.30 in additional "extended benefits."

The sole question is how to construe the following clause in the insurance contract:

"EXTENDED BENEFITS: This benefit applies only to the period beginning with the 91st day of uninterrupted covered hospital confinement to the termination of such confinement. Confinement must be for the definitive treatment of cancer. For this period of confinement the Company will pay 100% of the actual charges made by the hospital for room, board, and other customary services up to $10,000.00 (Ten Thousand Dollars) per month. Thirty (30) days will be considered a month and periods less than thirty days will be limited proportionately. This benefit will be paid in lieu of the Hospital Confinement and Drugs and Medicine Benefits (Parts 4A and C above). No deductions will be made for prior benefits paid. Subsequent periods of hospitalization less than 91 consecutive days will be paid under the Schedule of Benefits, Parts 4A through J, subject to the limitations contained therein. No lifetime maximum."[2]

The dispute turns on the date when the insurer became obligated to pay extended benefits. The quoted extended benefits clause provides extended benefits only during the period *"beginning with the 91st day of uninterrupted covered hospital confinement."* Plaintiff asserts that Catherine Johnson's uninterrupted hospital confinement began February 17, 1982; hence, he is entitled to extended benefits commencing May 18, 1982.

Defendant, on the other hand, contends that Catherine Johnson did not begin the required period of uninterrupted hospital confinement until August 9, 1982. Accord-

---

1. I announced my rulings on these motions by a brief order dated March 9, 1984 so that counsel could better prepare for trial. This is the opinion which I then indicated would follow. My order of March 9, 1984 must be modified to award judgment to the plaintiff on his first claim for relief in the sum of $33,433.30 rather than $32,653.68 as erroneously stated in the prior order. On review of the plaintiff's motion for partial summary judgment and supporting affidavits, I have determined that $33,433.30 is the correct amount.

2. Subpart L of Part 4 of the Policy.

ingly it has paid for extended benefits commencing November 8, 1982. It asserts that it is not obligated to pay extended benefits before November 8, 1982, because there were periods between February 17 and August 9, 1982 when Catherine Johnson was not actually confined to a hospital.[3]

■ Unquestionably there were periods during this time when Mrs. Johnson was not physically within a hospital. The question is whether her absences from the hospital constituted interruptions in hospital confinement within the meaning of the policy, so as to preclude accrual of extended benefits rights during those absences. The issue calls for interpreting the policy contract in light of undisputed facts, and therefore it is appropriate for decision by summary judgment. Fed.R.Civ.P. 56.

An agreed summary of Catherine Johnson's whereabouts from the onset of her illness until her death[4] shows that between February 17 and August 9, 1982, she was treated at four different facilities: University of Colorado Health Sciences Center in Denver, Colorado; St. Mary's Hospital in Grand Junction, Colorado; the Hilltop Rehabilitation Center in Grand Junction, Colorado; and the University of Oregon Medical Center in Portland, Oregon. In this period of less than six months she had eleven hospitalizations.

During this time there were fifty-four days when Catherine Johnson was not actually in a hospital bed. Plaintiff has averred that from February 17 through August 9, 1982, his wife was continuously bedridden and partially paralyzed. It is clear that she was undergoing continuous treatment for cancer throughout this time. She was unable to receive the best medical care available for her condition near her home in Grand Junction, Colorado, and she was therefore required to make one trip to Denver and three trips to Portland, Oregon for treatment. These trips between hospitals account for some of the asserted interruptions in hospital confinement. Because Catherine Johnson was confined to a wheelchair and had no bladder or bowel control, she was unable to fly between hospitals. Her family purchased a motor home and drove her between Grand Junction and Portland, each one way trip taking approximately three days. At times she had to wait to be admitted to the hospital. She spent some additional time outside a hospital while transferring between St. Mary's Hospital in Grand Junction and the Hilltop Rehabilitation Center, also in Grand Junction. She transferred between these facilities because Hilltop provided better treatment for her paralysis and provided care at a lower cost than St. Mary's.

Plaintiff asserts that these brief absences from a hospital, which were necessary and incident to obtaining medical treatment in another facility or travelling between hospitals, were not interruptions of "hospital confinement" within the meaning of the policy. Defendant does not dispute the plaintiff's characterization of his wife's condition or the purposes for her absences from the hospital during this period. Rather, the defendant asks that I construe the policy provision strictly and seems to argue that *any* interruption in hospital confinement, no matter for what length or purpose, stops accrual of time under the extended benefits provision.

This is a diversity case. The contract was made in Colorado, and Colorado has more contacts with the matter than any other state. Colorado law therefore governs. The issue is one of first impression in Colorado, and thus I look to the general principles of Colorado law regarding construction of insurance contracts.

■ Where the terms of an insurance contract are plain and unambiguous, a court may not rewrite the contract between the parties but must enforce it as written.

---

3. The difference between the amount of benefits paid to the plaintiff and the amount which would have been paid if extended benefits were payable commencing on May 18, 1982 is $33,-433.30. This is the amount in controversy in plaintiff's first claim for relief.

4. Exhibit B to Kenneth D. Johnson's affidavit supporting his motion for summary judgment. This same schedule was incorporated into the defendant insurer's motion for summary judgment as Exhibit B.

*Board of County Commissioners v. Guarantee Insurance Co.*, 90 F.R.D. 405, 407 (D.Colo.1981); Couch on Insurance 2d § 15:4 (Rev. ed. 1984). However, where the terms of an insurance policy are ambiguous, the contract is to be construed strictly against the insurer.[5] Since the insurer drafts the contract, it has a duty to make its meaning clear. *Coxen v. Western Empire Life Insurance Co.*, 168 Colo. 444, 452 P.2d 16 (1969); Couch on Insurance 2d § 15:74 (Rev. ed. 1984); 9 Appleman, *Insurance Law and Practice* § 7401. The policy as a whole must be examined in order to determine whether there are any other provisions that might resolve the ambiguity. *Coxen, supra*, 452 P.2d at 18. The construction of a policy provision must be fair, natural and reasonable rather than strained or strictly technical. *North American Accident Ins. Co. v. Cochran*, 74 Colo. 515, 223 P. 28, 29 (1924); *Messenger v. German-American Ins. Co.*, 47 Colo. 448, 107 P. 643, 645 (1910); *Barclay v. London Guarantee & Accident Co.*, 46 Colo. 558, 105 P. 865, 866 (1909). When a provision is susceptible to two conflicting constructions, that construction which best accomplishes the purpose of the contract as a whole must be adopted. *Columbian Nat. Life Ins. Co. v. McClain*, 115 Colo. 458, 174 P.2d 348, 350 (1946).

Applying the principles set out in Colorado case law, I find and conclude that the extended benefits provision is ambiguous. Under the above stated Colorado rules of construction, I hold that Catherine Johnson's brief absences from hospitalization between February 17 and August 9, 1982 were not interruptions in hospital confinement under the terms of the policy. These brief interim periods were generally incident to her securing medical treatment available only at other hospitals.

The defendant insurer has advanced an overly restrictive and technical interpretation of the disputed provision. It seeks an interpretation which would isolate this provision from the context of the whole contract. Examining the policy as a whole, I find that the extended benefits provision is an integral part of the policy's protection. It was reasonable for the insured to believe when he purchased the cancer insurance policy that the extended benefits provision would adequately insure him and his family against a long term, debilitating illness from cancer. To any reasonable person paying for "extended benefits" that would appear to be the primary reason for purchasing such benefits. An insurance company should not be allowed to collect premiums by stimulating a reasonable expectation of risk protection in the mind of the consumer, and then hide behind a technical definition to snatch away the protection which induced the premium payment. If the company desired to give every trivial interruption in hospitalization the effect it here seeks, it could have so stated in plain language. But that course would have made the policy less attractive from a marketing standpoint.

Benefits paid under the other provisions of the policy are limited to maximum amounts which can be expected to be inadequate to cover actual charges. These payments only cushion the financial impact of cancer. The extended benefits provision, however, provides a maximum payment more in keeping with anticipated actual charges, $10,000 per month. During the period between May 24, 1982 and November 8, 1982, when the insurer erroneously refused to pay extended benefits, the plaintiff accrued $52,417.91 in medical bills. Under the non-extended benefits schedule the plaintiff was reimbursed for only $18,984.61. When the extended benefits provision is applied, the plaintiff is covered for the entire actual charges which accrued during this period.

---

**5.** This rule has been applied with particular force in some courts where the ambiguity is in a cancer insurance policy. Abuses relating to the sale of cancer insurance have been documented. The Massachusetts Commissioner of Insurance, for example, has effectively banned the sale of cancer insurance because he found that such policies were a poor health care investment and were being marketed in an unscrupulous manner. See, *American Family Life Assurance Co. v. Commissioner of Insurance*, 388 Mass. 468, 446 N.E.2d 1061 (1983).

It apparently was contemplated that during the first ninety days of hospital confinement, an insured must expect to utilize other resources to pay for a portion of the medical expenses. Extended benefits, on the other hand, are designed to provide coverage for precisely the kind of long-term, debilitating illness that occurred here, an illness which without such insurance, may completely exhaust a family's financial resources. It is precisely this protection which makes the policy attractive to the consumer.

I hold that the time Catherine Johnson spent travelling between hospitals to secure better medical treatment did not interrupt her hospital confinement in the sense of these words as used in the policy. If the proper medical care had been available to her in the hospital near her home, where she was first confined, she would not have had to undertake the series of admissions, releases and readmissions to other hospitals during the last year of her life. It would not be reasonable to interpret the extended benefits provision to require her and her family to forego the best medical care in order to avoid forfeiting the policy's extended benefits coverage.

This conclusion, reached by applying general rules of construction, is supported by Colorado case law interpreting similar provisions in disability insurance policies which required continuous confinement to one's house to qualify for disability benefits. The disability insurance cases have consistently held that a reasonable interpretation of the provision permits an insured to leave his or her house for temporary, exceptional absences and yet be considered "continuously confined" to the house for policy coverage purposes. *See,* Couch on Insurance 2d § 53:142 (Rev. ed. 1983). Specifically, courts have held that an insured may leave his or her house to seek medical treatment without giving up coverage for continuous confinement. *Mutual Benefit Health and Accident Assc. v. McDonald,* 73 Colo. 308, 215 P. 135 (1923); *Mutual Benefit Assc. v. Nancarrow,* 18 Colo.App. 274, 71 P. 423 (1903). By analogy, "uninterrupted covered hospital confinement" must be reasonably construed to apply to

an insured who suffered from such a debilitating cancer that she was confined to the hospital substantially all of the time, leaving the hospital not because she no longer needed hospitalization, and not for personal or business reasons, but only because leaving was necessary to secure better medical attention.

Courts in a number of other states have liberally construed policy provisions which require the insured to be "continually" or "continuously" confined to a hospital for treatment in order for benefits to be paid. In *United Equitable Insurance Co. v. Padgett,* 59 Tenn.App. 626, 443 S.W.2d 480 (1969), the insured held two policies; one provided payment "when such injury shall continually confine the insured to a hospital," and a second provided payment when an injury shall "necessarily continuously confine the Insured within a hospital." The insured was hospitalized for an injury from January 29, 1967 until February 3, 1967. He then left the hospital against his doctor's orders, went home and remained in bed until he was admitted to another hospital where he was confined from March 15, 1967 until April 1, 1967. The court held that the insured was covered for both periods of hospitalization, and stated:

"Applying, as we are required to, the liberal rules of construction ..., we do not think as a matter of law the insured's staying at home in bed would constitute a fatal variance but was substantial compliance with the terms of the policy. Credible evidence shows beyond any doubt that the second period of hospitalization was a direct result of the injury which caused the first hospitalization. As heretofore pointed out, the insured during his stay at home remained a bed patient which would not break the continuity of his confinement resulting from the injury which the policy agrees to pay benefits when the insured is hospitalized." *Id.,* 443 S.W.2d at 482.

Similarly, in *National Central Life Insurance Co. v. Anderson,* 443 S.W.2d 786 (Tex.Civ.App.1969), the court found that the insured was continuously confined to a

hospital where, within a five-month period, she underwent three periods of hospital confinement totalling thirty-five days. Noting that doubts should be resolved in favor of the insured, the court held that where absences from the hospital were only occasional, for therapeutic reasons and under the advice of physicians, such absences would not defeat the right to recover if the confinement otherwise was continuous. *Id.* at 789. And in *Fowler v. United Equitable Insurance Co.*, 200 Kan. 632, 438 P.2d 46 (1968), the Supreme Court of Kansas construed a clause which required that an injury "continually confine the insured to a hospital." There the insured was hospitalized from November 14 to December 6, 1965 and was again hospitalized, because of the same injury, from January 2 until February 6, 1966. The court found that the provision in question was ambiguous and stated:

> "The test to be applied in determining [the intention of the parties] is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean.... Since an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer, and not the insured, must suffer." 438 P.2d at 48.

Applying this test, the court held that the insured was continuously confined to the hospital and was thus covered for both periods of hospitalization.

If the facts of the above discussed cases allowed a conclusion that the hospital confinements there were continual for policy purposes, the facts before this court compel that conclusion.

Between February 17 and August 9, 1982, Catherine Johnson spent approximately four months in hospitals during eleven periods of confinement. Her ratio of time spent in hospitals to time spent outside hospitals was thus greater than in any of the above cases. As in the above cases, each period of her hospitalization was necessitated by the same cause—progressive, continuous, relentless, deterioration of her body from cancer. Her brief absences from a hospital, as in *National Central*

*Life Insurance Co. v. Anderson, supra,* were only occasional, for therapeutic reasons, or by necessity in the course of changing hospitals. All were pursuant to the advice of her physicians. I see no distinction between "uninterrupted" confinement and "continuous" or "continual" confinement which would dictate a different result.

*Atkinson v. Pilot Life Insurance Co.,* 260 N.C. 348, 132 S.E.2d 681 (1963), is sometimes cited as contrary to the prevailing liberal construction of policy provisions requiring continuous hospital confinement. In *Atkinson* the insured was hospitalized eleven days because of an accidental injury. Nearly four months later, he was again hospitalized nineteen days for treatment of the same injury. The court held that he was not continuously confined within the meaning of the policy. The case before me is very different. In *Atkinson*, the insured spent only one month in the hospital during a five month period. Additionally, there was no consideration of the insured's condition during the interim four months or of the reason for his initial discharge from the hospital. Given the same facts, I would have reached the same result.

I hold that the defendant insurer has breached its contract by refusing to pay extended benefits for the period in question. I consequently grant the plaintiff's motion for partial summary judgment on his first claim for relief and deny the defendant's motion for summary judgment on that claim. I also deny the defendant's motions for summary judgment on the plaintiff's second claim in which the plaintiff alleges that the defendant has breached its duty to exercise reasonable care in fulfilling its obligations under the policy, and on the plaintiff's third claim in which the plaintiff seeks damages for emotional distress from the defendant's allegedly willful and wanton breach of contract. Further proceedings are necessary to decide the issues raised by the second and third claims.

 I also deny the defendant's motion for judgment on the pleadings on the plain-

tiff's fourth claim seeking exemplary damages. The defendant is correct in its assertion that exemplary damages may not be awarded on a mere claim for breach of contract. *Williams v. Speedster, Inc.,* 175 Colo. 73, 485 P.2d 728 (1971). But here the plaintiff has alleged a claim sounding in tort which may support an award of exemplary damages.

Accordingly,

IT IS ORDERED that the defendant pay to the plaintiff $33,433.30, the amount of the extended benefits which should have been paid to the plaintiff for medical expenses incurred for his wife between May 18, 1982, and November 8, 1982. The Clerk of the Court shall enter an amended judgment to reflect this corrected amount. The defendant shall also pay to the plaintiff interest at the statutory rate from the date or dates on which the defendant became liable to the plaintiff to pay extended benefits under the terms of the policy.

The parties shall confer within ten days to determine the amount of interest due and shall notify the court in writing of the amount. If they cannot agree, either party may apply for an expedited hearing on any issues unresolved.